## BEARD v. MATHIESON ALKALI WORKS, Inc.

### No. 1611.

Court of Appeal of Louisiana. First Circuit.

June 9, 1936.

A. Sidney Burns and C. V. Pattison, both of Lake Charles, for appellant.

McCoy, King & Jones, of Lake Charles, for appellee.

OTT, Judge.

The suit is for compensation on account of an injury plaintiff claims to have sustained while working for the defendant corporation on December 23, 1934. Plaintiff claims to have suffered a sacroiliac strain on said date in an effort to catch an electric drill, weighing some thirty-five pounds, which slipped out of his hand while he was drilling a hole in a steel column about fifteen feet from the floor. He alleges that his wages were $18 per week, and that he was disabled from performing work of any reasonable character since said injury, except for fourteen weeks from January 29 to May 11, 1935, and he is asking for compensation at the rate of $11.70 per week from December 30, 1934, for such time, not exceeding 400 weeks, as his disability may continue, less said fourteen weeks, plus $75 for medical services on account of said injury. He alleges that notice of said injury was given his employer.

Defendant for answer denied that plaintiff sustained the injury set forth in his petition, and alleges that notice of the injury was given on October 16, 1935; defendant denies that plaintiff is disabled from work, but avers that if he is so disabled, his disability arose from other troubles or ailments than those alleged in his petition.

Judgment was rendered by the trial court rejecting plaintiff's demands. He has appealed.

In order for plaintiff to recover he must prove with legal certainty at least two principal facts:

(1) That he received the injury set out in his petition, and

(2) That the injury in itself, or in combination with other ailments, produced disability to do work of any reasonable character. We find that he has proved neither of these facts with that degree of certainty necessary to form the basis for a judgment in his favor.

Plaintiff describes the manner in which he claims to have received the strain in his

back. He was standing on this beam some 15 feet from the floor; the electric drill slipped out of his hand, and in attempting to catch the drill with his right hand, he caught the upright column with his left hand, stooped over suddenly, and strained his back. He says that he experienced a sharp pain for an instant, but was soon able to walk down to the floor. The accident happened about 3 o'clock in the afternoon. He continued to work until time to quit, which was about 4:30 p. m., but felt some pain the rest of the afternoon. He worked the next day from 8 o'clock a. m. to 3 o'clock p. m. with a half hour out for lunch. He was helping drill overhead while standing on the floor. He was discharged that day because there was no more work for him to do.

He did no further work until the latter part of January, 1935, when he secured a job with the Shell Petroleum Company in doing welding shop work. He was examined by a physician before going to work for the Shell Company just a little more than a month after he claims to have received his back strain on December 23, 1934. Nothing was found wrong with him except a varicose vein; nor did he at that time mention the fact that he had been injured in the back a month or so previous. He does say that he suffered pain in his back during the time he was off from work and until he went to work for the Shell Company, but that he thought the pain would soon clear up. He consulted no doctor during this time.

Plaintiff worked for the Shell Company more or less regularly, as long as he had work to do, in three different places, until some time in July, 1935, when he claims to have had severe pains in his left leg with hurting and stiffness in his back, rendering it necessary for him to cease work for the Shell Company. He consulted Dr. Wharton, an osteopath, on August 23, 1935, and it seems his trouble at that time was found to be sciatica in his left leg. It was in searching for possible causes for this sciatic condition, and in making up a history for a proper diagnosis by this doctor, that the first suggestion came to plaintiff that the sciatica might have been caused from the sacroiliac strain suffered on December 23, 1934, eight months previously.

Only one witness besides the plaintiff was present and testified as to how the alleged back strain occurred on December 23, 1934. He says that plaintiff seemed to have suffered an injury when he tried to catch the falling drill; that when the plaintiff came down from the beam in a minute or so he complained of an injury, and witness asked him what happened; plaintiff replied that he hurt his back. Plaintiff continued working for the remainder of the day and also worked the next day. This witness says that plaintiff was not himself the next day, which he later explains to mean that plaintiff was stiff and could not get around as he had before.

Plaintiff made no complaint of an injury to his employer nor to any of its physicians, although he admits that he was well acquainted with the first-aid station maintained by defendant, and, furthermore, plaintiff had, on several occasions previous to his alleged injury, consulted and received treatment from the defendant's physicians for various other minor injuries. The first notice that defendant had that plaintiff claimed to have received an injury on December 23, 1934, was on October 16, 1935, more than nine months after the alleged injury occurred. Plaintiff's explanation of this delay is that he did not discover the connection between his present sciatica and the sacroiliac strain until Dr. Wharton suggested this strain as a possible cause of the sciatica.

While we do not believe the evidence proves with sufficient certainty that the plaintiff sustained a sacroiliac strain on December 23, 1934, to cause a disability, we prefer to rest our decision on the fact that, if there was a back injury sustained by plaintiff on that occasion, the proof does not show that his present trouble was caused thereby nor that such injury contributed to his present ailment.

Dr. Wharton cannot and does not testify that plaintiff suffered a sacroiliac strain. He only has plaintiff's statement of the occurrence in getting a history from which to determine the cause of the sciatica. He admits that the sciatic condition could be caused by many other things. Dr. Holcombe, a defense witness, testifies that where a sacroiliac strain is sustained, the most severe pain is suffered within the first 48 hours. Dr. Wharton's testimony is to the same effect. X-ray pictures were made of the sacroiliac regions in November, 1935, and these pictures show no dislocation or maladjustment of these joints at that time.

Coming now to a determination of the cause of the present sciatic condition of

plaintiff, even his own witness Dr. Wharton, on whose testimony he largely relies to make out a case, testifies that the sacroiliac strain, if such occurred, is only a possible cause. Dr. Holcombe goes further and says that such a strain, if such was sustained, would not be even a probable cause. He gives as a cause of whatever sciatic trouble plaintiff might have had as that of bad tonsils. With these two opinions from medical experts, one that the alleged sacroiliac strain could possibly cause the sciatica and the other that such a strain would not probably cause the sciatica, we are unable to say that the sacroiliac strain, if such occurred, caused or contributed to the present sciatic condition.

■ To be sure, if we could find as a fact from the evidence that plaintiff suffered some back injury on December 23, 1934, even though that back injury was not in itself sufficient to cause disability, but if we found that the injury caused a condition in plaintiff whereby a latent disease was aroused, or if we found that such injury was a contributing cause to his present ailment, we would not hesitate in awarding him compensation. On such a finding we would gladly follow the principles laid down in the cases cited by learned counsel for plaintiff, particularly the cases of Blackman v. Hope Engineering & Supply Co. et. al., 11 La.App. 92, 120 So. 682, and Anderson v. Louisiana Oil Ref. Corp., 16 La.App. 294, 134 So. 343. But we do not think the facts in this case support such a finding.

The learned trial judge had a full appreciation of the issues and proof in the case. We find no difficulty in reaching the same conclusion which he reached, and take the liberty of quoting the following pertinent excerpt from his well written opinion:

"In compensation cases as in all other cases, the plaintiff must make out his case with legal certainty. In the present case plaintiff has failed to do so. From the testimony of the experts a strain to the sacroiliac joint of sufficient severity to totally incapacitate one would necessarily be accompanied by excruciating pain. Even the plaintiff in his testimony did not complain of such pain, and the circumstances surrounding the case, that is plaintiff's failure to avail himself of the medical aid furnished by the defendant and plaintiff's failure to seek medical aid for eight months after the alleged injury, in the opinion of this court are sufficient to raise a serious question in the mind of the court as to the injury.

"We recognize the rule of law that a minor injury setting in motion or causing the flare up of a latent disease is compensable, yet in this case we do not find that the plaintiff received such an injury.

"It is entirely possible that his sciatic condition does exist and is painful, and in plaintiff's mind is directly traceable to the circumstances about which he testifies, but plaintiff's evidence has not so convinced the court."

For the reasons assigned, the judgment appealed from is hereby affirmed.