76 So.2d 635 (1954)
James C. ROBBINS, Plaintiff-Appellee,
v.
CHICAGO MILL AND LUMBER COMPANY, Defendant-Appellant.
No. 8253.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1954.
Rehearing Denied January 4, 1955.
Writ of Certiorari Denied February 14, 1955.
*636 Cotton & Bolton, Rayville, for appellee.
Sevier, Yerger & Sevier, Tallulah, for appellant.
AYRES, Judge.
This is an action for compensation in which plaintiff claims that, as the result of an accident alleged to have occurred about 9:30 A.M., December 15, 1952, while engaged in manual labor in the course and scope of his employment, he sustained a bilateral inguinal hernia and injuries to his lower back, which have caused him to be totally and permanently disabled.
After trial, there was judgment in plaintiff's favor for compensation at the rate of $21.45 per week from the date of the filing of the suit and continuing for 75 weeks, with legal interest thereon, less a credit of $137.45 previously paid, together with $400 medical expenses, subject to previous credits.
The defendant took and perfected appeals to this court and plaintiff answered the appeals, praying that said compensation be decreed payable during the period of his disability, not exceeding 400 weeks, with the payments to begin from date of injury, and for an increase of the medical expenses to $1,000, without credit for previous payments.
Defendant strenuously denies that plaintiff sustained an accident or any injuries as the result of the alleged accident. This matter, therefore, presents purely an issue of fact, and we are confronted with the question of a determination as to whether or not plaintiff sustained an accident, or, if he did, whether there has been established any casual connection between the alleged accident and the claimed resulting injuries.
Plaintiff contends that at the time aforesaid, while delivering and placing planks upon a table for a machine in defendant's box factory, it was necessary for an aisle or passageway to be made, and, accordingly, that he moved a "flat" loaded with approximately 150 of these planks, weighing approximately 200 pounds, by lifting one end about a foot high, the strain and lifting of which caused a hernia down his right side. Plaintiff testified that shortly thereafter he notified his foreman and the assistant superintendent of his accident and injury. He continued to work the remainder of the day without further complaints, returning to his residence in Delhi, Louisiana, in a car of and accompanied by Leo House, who, for some reason not disclosed by the record, was not produced as a witness.
Plaintiff and his wife testified that plaintiff upon returning home was sick and that the hernias as large as an egg or lemon were clearly discernible. After remaining at home the following day, he reported the succeeding day for work, when he says he again informed his superior of his injury, who sent him to the main office, from where he was carried to Dr. Allen, defendant's physician. He was then carried to a hospital *637 in Vicksburg, Mississippi, and there examined by Dr. W. H. Parsons, who procured X-rays to be made in connection with his examination. Later, plaintiff was examined by Dr. Shelton Teer of Delhi at plaintiff's request. Dr. Teer had by surgery in 1948 successfully repaired a bilateral hernia on plaintiff, after which he was given a certificate as being fit for general labor.
This was the second occasion upon which plaintiff was employed by the defendant. He was first employed in September, 1951, after which he worked for a period of two months. He was re-employed during June, 1952, where he continued to work until his alleged injury December 15, 1952. Plaintiff asserts that on both occasions he was given a physical examination at the time of or soon after he was employed. Dr. Allen and his records and the records of the defendant establish the contrary. In connection with physical examinations of the employees, the personnel office prepared and delivered requisitions to the prospective employee for the physician, who, on making the examination, would fill out a card showing the examination and findings which was submitted back to the company and there placed in the party's employment file. The examining physician in billing for his services listed each person individually by name, as it was on that basis he received pay for the examinations. No record of any examination was in plaintiff's employment file or in the doctor's office and there was no record of any request for a bill or other document indicating a payment for plaintiff's examination on either of these occasions.
The testimony in this connection further shows that due to a rush in work in 1952, the examinations had not been promptly made and a concerted effort and drive was being put forth to have every employee examined who had not been previously examined. Many had been examined and plaintiff was scheduled for the same procedure on or about December 17.
There were no eyewitnesses to plaintiff's alleged accident although numerous employees were working in the same department and in the immediate vicinity of plaintiff, some of them only a few feet away. Plaintiff claims Arthur McClish saw the accident and his attention was called thereto. This was denied by McClish. The foreman and assistant superintendent testified that plaintiff made no report or complaint of a hernia to them but only complained of his back.
Dr. Parson's findings were negative so far as injuries resulting from any accident were concerned. His examination of the X-rays disclosed, however, that plaintiff had a very large kidney stone in his right kidney, a hernia on the right side and varicose veins of the lower extremities. The hernia, he says, was of a moderate size, about the size of the end of an average thumb, and although he examined the left side, he did not find a hernia there. The hernia, in his opinion, could not have been observed by a layman and plaintiff's back injury was attributable to the unusually large kidney stone.
Dr. Allen described the right hernia as about the size of a small marble and that the hernia on the left side could not be seen but could only be discerned by examination with his finger. This is contrary to plaintiff's testimony and that of his wife as to the prevalence, size and bulging of the hernias on the evening following the accident.
Dr. Teer, plaintiff's witness, described the hernia as very easily ascertainable upon the right but more difficult on the left, which condition he stated, if it had existed September, 1951, or June, 1952, the dates of the beginnings of plaintiff's employment with defendant, would have been readily observable by an examining physician.
Dr. Allen, further testifying with reference to his examination of December 17, stated there were no signs of recent trauma, and that upon physical examination the hernia was easily and readily reducible without pain or tenderness on manipulation. Symptoms suggesting the possibility of a traumatic hernia or the traumatic aggravation of a hernia are pain and weakness, inability to work due to pain, and almost *638 always nausea because the intestines are involved, with the victim usually going into a cold, clammy state of perspiration. Plaintiff does not claim to have experienced these usual symptoms, which, had they occurred, fellow employees would, without doubt, have observed. None of the experts upon their examination found the tenderness or pain following the occurrence of a recent traumatic or a recent traumatically aggravated hernia.
Defendant's experts were of the opinion that the hernias were not of recent origin, while Dr. Teer stated there were no facts upon which he could base an opinion, although he agreed as to the prevalence of pain and tenderness upon examination for a recent hernia.
T. C. Hopkins, a resident of Delhi, a close neighbor of plaintiff, who was employed by the Delhi Country Club from January 1, 1951, to April 4, 1953, testified that he hired plaintiff, whom he had known from four to six years, in connection with his work in 1952, and that during such employment, which was prior to June, 1952, plaintiff had told him that he was ruptured.
The observation of our distinguished brother of the district court, wherein he stated:
"Under the circumstances, this Court is of the opinion that the plaintiff should have the benefit of the doubt under the benign interpretation of our Workmen's Compensation laws, as evidenced by our appellate court decisions. Consequently, he should receive some compensation for his injuries. However, due to the nature of the evidence and the strong possibility that Robbins took advantage of a situation in his favor, we do not believe he should receive the full amount for permanent disability",
is expressive of his views of the weakness of plaintiff's case and his obvious failure to adequately establish his claims.
Although mindful of the well established and justified policy of our courts to liberally construe the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., in favor of the injured workman, it has been repeatedly held by this court that the plaintiff carries the burden of proof to establish his claim in a workmen's compensation suit and that conjecture and probability may not serve as a basis of judgment in such a case. Davis v. Swift & Co., La. App., 68 So.2d 670, 673; Roberts v. M. S. Carroll Co. Inc., La.App., 68 So.2d 689, and the cases therein cited. A review of the entire record in this case with particular care leads us to the inevitable conclusion that plaintiff has failed to establish by a preponderance of evidence and to that degree of certainty required by law that an accident occurred or that he sustained injuries thereby in defendant's employment.
For the reasons assigned, the judgment appealed from is reversed, plaintiff's demands rejected, and his suit dismissed, without, however, the assessment of costs under the provisions of LSA-R.S. 13:4525.
Reversed.