LOTTINGER, Judge.
This is a workmen’s compensation proceeding wherein the plaintiff alleges himself to be totally and permanently disabled as the result of a fall which he sustained on or about June 17, 1954, while in the employ of one of the defendants, P. B. Flowers. It is alleged that on the date just mentioned the plaintiff, a carpenter, fell through the floor joists of the building he was working on causing him to suffer “a lumbo sacral strain, fracturing three (3) of petitioner’s ribs, and suffering bilateral inguinal hernia and/or a direct inguinal hernia.” The other defendant, the Fidelity and Casualty Company of New York, is the workmen’s compensation insurer of Flowers. The answer of the defendant is in the form of a general denial, except that same admits that compensation was paid to the plaintiff at the rate of $30 per week until and through September 29, 1955, and that medical expenses were paid on behalf of the plaintiff in the amount of $188.75.
Judgment was rendered in the court below in favor of defendants and the matter is now before us on an appeal taken by the plaintiff.
There seems to be no question as to the occurrence of the accident. The plaintiff testified in detail as to its occurrence and stated that two employees were present when it occurred. He was taken by P. B. Flowers to Dr. Stevens almost immediately afterwards and was found to have three broken ribs. There is some question as to the distance the plaintiff fell. According to his testimony, he fell a distance of 5 or 6 feet, while, according to the testimony of Flowers, the joists upon which he was standing were only 30 inches from the ground. The plaintiff testified that he has done no work since the accident. In response to questions addressed him by the court, he stated that he had been in continual pain since the date of the accident whereas he had never suffered pain prior thereto.
The plaintiff’s brother, one Joe L. Gas-pard, testified that the plaintiff complains of *446 pains in the right groin, right shoulder and on the right side together with the lower part of his ribs. He stated that he had never complained of pain prior to the accident, and that he has done no work since he was injured.
Two doctors testified on behalf of the plaintiff. Dr. Steve F. Price, general practitioner, testified that he had examined the plaintiff on December 29, 1955, at which time he found him to have a direct inguinal hernia. He stated that his examination revealed a bulge on the right side, and that the plaintiff was unable to do any lifting or heavy work, and that, therefore, he would not pass him on an industrial examination. This doctor further testified that he had examined the plaintiff on only one occasion. He stated that a severe trauma could cause the type of hernia from which the plaintiff was suffering, and that it was possible that a fall of approximately 4 or 5 feet could cause such a hernia.
The testimony of Dr. Frank Savoy, Jr., a general practitioner, was taken by deposition on December 30, 1955. This doctor stated that he first saw Plaintiff on December 20, 1955, at which time he found a right inguinal hernia. He further described the hernia as being direct, and stated that in his opinion, the plaintiff required surgery. When questioned as to the cause of the abnormality or bulge, this doctor stated that while such a trauma as described to him by the plaintiff possibly could have caused the condition, that he did not believe it was the cause of same.
Dr. G. E. Barham, Surgeon, who testified on behalf of the defendants, testified that he examined the plaintiff on January 17, 1955 and again on December 16, 1955. He stated that on the occasion of the January 17th examination he was of the opinion that the plaintiff had a right direct inguinal hernia. He testified, however, that he was in error in making this diagnosis, and that the plaintiff did not have a hernia. Further, he testified that the plaintiff is presently able to do normal manual work and that he presently suffers from no disability whatsoever.
Dr. Luhrue Stevens, general practitioner, testified that he examined the plaintiff on June 16, 1954, at which time he complained of pain only in his chest. While this doctor examined the plaintiff on several occasions, his latest examination was on December 16, 1955. He testified that while it was possible that at one time he had diagnosed a hernia that as of the December 16, 1955 examination, he was absolutely positive that the plaintiff had no hernia whatsoever.
It appears that three other doctors also examined the plaintiff on December 16, 1955. Dr. R. G. Holcombe, Jr., Surgeon, stated that he examined the plaintiff on only one occasion, prior to trial, i. e., December 16, 1955, and that he found his upper extremities to be normal. This doctor testified that while he observed a bulge in his opinion the same was normal and would not even be noticeable in obese persons. He stated positively that the plaintiff was not suffering from a hernia. This doctor was called upon in court to again examine the plaintiff and as a result of this examination he stated that he found no hernia and that the plaintiff was at that time presently able to work.
Dr. Robert Emmett, Surgeon, also examined the plaintiff on December 16, 1955. He testified that the upper extremities were normal and that while in the lower extremities he found two bulges, it was his belief that they were normal and frequently found on a man whose muscle tone is not up to par. He testified positively that the plaintiff did not have a hernia and that the bulge had “no clinical significance.” This doctor also examined the plaintiff during the course of the trial and stated that he observed no change in plaintiff’s condition as having occurred since December 16, 1955.
Dr. Leonard Knapp, Surgeon, also examined the plaintiff on December 16, 1955. He stated that the plaintiff did not have a hernia and that in his opinion, there was “a very good possibility that he was exaggerating his complaints somewhat and he should be able to return to his former employment.”
*447 Dr. Charles V. Hatchette, Orthopedic Specialist, examined the plaintiff on three occasions. He testified that the first examination took place on September 27, 1954, at which time the plaintiff complained of pains in his back, chest and groins. His examination revealed two fractured ribs which had not completely healed. The next examination occurred on December 10, 1954, at which time this doctor stated that he felt the plaintiff was about ready to return to his regular duties. He did not, at that time, find evidence of hernia, nor of any permanent disability. The third examination took place on December 19, 1955. The doctor testified that as of that time, he could not account for the plaintiff’s continued complaints of pain, as he found his arms and back to be normal, the ribs having healed in excellent condition. In his opinion the plaintiff was at that time “completely and entirely cured from any injuries he might have received in July of 1954, and that he was perfectly capable of returning to any type of work he might have performed prior to July, 1954.”
Dr. George B. Briel, Orthopedic Surgeon, testified that he examined the plaintiff on July 9, 1954, and again on August 18, 1954, at which latter date plaintiff appeared to feel better. He stated that at that time, he felt there was a possibility of a herniation and referred him to Dr. Stevens for examination. On September 22, 1954, he again examined the plaintiff and found that insofar as his back was concerned, he was entirely well and could return to work. He again examined the plaintiff on December 16, 1955, at which time he found no back pathology and concluded that the plaintiff could very definitely return to his work.
We do not believe that the lay testimony in this case is sufficient to prove disability and look to the medical testimony for the answer to this question. The trial judge evidently was of the opinion that the medical testimony preponderated in favor of the defendants and from the above and foregoing we are unable to state that he was manifestly erroneous in so concluding. As a general rule we should accord greater weight to the testimony of trained and experienced surgeons over that of non-surgeons or general practitioners and for that reason agree with the ruling of the Lower Court.
Finding no manifest error in the judgment appealed from the same is hereby affirmed.
Judgment affirmed.