LOTTINGER, Judge.
This matter is before us on an appeal taken by the plaintiff from a judgment of the court below dismissing his suit for compensation benefits as for total permanent disability.
The petition sets forth on July 20, 1955 that “while he (plaintiff) was getting out from under a truck which he was checking for the employer, petitioner struck his back on a brace under the said truck which he was checking as aforesaid, causing petitioner severe injuries to his back as hereinafter described.”
The occurrence of the accident, insurance coverage, etc. were stipulated. It was further stipulated that the plaintiff had not resumed work since July 21, 1955. The plaintiff did not testify nor did he offer any lay testimony in support of his demand. Consequently, the only testimony offered is that of the various doctors who examined the plaintiff.
Dr. Fred L. Mayer, a general practitioner, testified on behalf of the plaintiff. This gentleman testified that he had examined the latter on September 18, 1956. The result of this examination was as follows:
“ * * * My diagnostic impression was that whereas this man undoubtedly had a certain degree of psychological overlay of his condition, nevertheless, in view of the neurological findings which were pretty definite in my mind, the long history of the case, that is, something over a year, thirteen-fourteen months, since the date of injury, the apparent severity of his complaints and pain, the peculiar nature of the accident itself, that this man did have, at that time, some physical basis for his complaint, which would most probably be an injury in the spine in about the middle lumbar region, which would affect the nerves arising in and near that vicinity, the most likely type of injury that would cause that complex of symptoms, in my opinion, would be a so-called disc injury or ruptured interver-tebral disc and in addition I feel that this man rather definitely had what I would call a conversion hysteria.”
When asked if he thought the man could do physical labor at that time, the doctor replied that he did not think he could. He stated further that he thought surgical treatment for the type of injury which he *366 thought he had was necessary and that such treatment would incapacitate him from six to twelve months.
. On cross examination, the doctor stated that the patient complained of pain in his left lower hack region, in the buttock and in the left leg, particularly about the knee. When asked if x-rays taken by him showed any bone disease or any type of pathology referrable to the spine, the doctor stated, “In general the answer to that question is no, but I did see some evidence of spasm in the left lower back judging by the soas muscle shadow and an evidence of slight tilt of the 4th lumbar vertebra on the 5th and towards the left side.” When asked if he were able to state definitely that the plaintiff had a ruptured disc, the doctor answered “I am willing to state that it is my opinion that that is the most likely diagnosis in this case, yes.” He stated further that it was his opinion that it was most likely that the ruptured disc was between the 3rd and 4th or the 4th and 5th lumbar vertebrae.
The deposition of Dr. Oliver Duane For-man was taken at the instance of the plaintiff on September 17, 1956. This gentleman is a neuro-surgeon practicing in the City of Baton Rouge. He examined the plaintiff on January 10, 1956. His conclusions were as follows:
“I felt that some of Mr. Taylor’s signs, for example, the hypesthesia in the 4th lumbar dermatome and absent left kneejerk pointed strongly to a diagnosis of compression of the 4th lumbar nerve root on the left, probably due. to a ruptured interverte-bral disc at the 3rd. lumbar interspace. The widespread tenderness over the back and the defused distribution of his pain suggested that he was suffering from dorsolumbar neuralgia, secondary to sprain of his spine at the dorsolum-bar junction. I found no evidence of residual damage in the cervical area. My impression was that lumbar myelog-raphy would be necessary to clarify the diagnosis in this case.”
This doctor believed that the plaintiff was actually suffering from the pain which he complained of and believed further that the pain was due probably to a ruptured disc. When asked if he thought the plaintiff was disabled, the doctor replied: “Yes, I thought so. I thought his complaint was sincere and that he very likely was totally disabled with regard to performing his usual physical work, at that time.”
The doctor examined the plaintiff again on May 31, 1956, at which time a myelog-raphy was performed which revealed no abnormalities within the spinal canal from the 9th thoracic level to the lowest part of the spinal canal. When asked on cross examination whether he was able to find evidence showing that the plaintiff had suffered damage which was totally and permanently disabling, the doctor replied, “No, I wasn’t. I think the fact that his x-rays were within normal limits, both plane films and myelogram, and there was no demonstrable atrophy of his muscles at the time I saw him, were against there being-present any residual damage that would be permanently disabling.”
The deposition of Dr. S. J. Rozas, a general practitioner was taken at the instance of the defendants on September 28, 1956. He saw the plaintiff on July 22, 1955 at which time he was admitted to the hospital in Opelousas where he was kept for 3 days.
The plaintiff was seen on July 22nd, 1955 and about every other day through the month of August as well as through the month of September and was seen by this doctor on October 7th. He was given diatherrpy treatments and also some injections which were used for sore muscles. He suggested that an orthopedic examination be made because of the fact that the plaintiff continued to complain of pains in his back. When asked if he could find any evidence showing where the plaintiff had suffered damage which would be totally and *367 permanently disabling, the doctor replied that he could not.
The testimony of Dr. Irving Redler was taken by deposition on September 17, 1956 on behalf of the defendants. This gentleman is a specialist in the field of orthopedic surgery and had examined the plaintiff on October 21, 1955. When asked his conclusions as the result of his examination, the doctor stated:
“It was my opinion, based on the history that Mr. Taylor related, together with the physical and x-ray findings, that what he probably had suffered was a contusion of his back.
“It was also my impression that I could find no evidence of any residual disability as a result of the injury that he had sustained, and I felt that he could return to his former type of work.”
On cross examination, this doctor stated that he could not elicit either of the achilles reflexes, but that this frequently can be a perfectly normal finding. When asked if he had performed a myelogram, the doctor stated that he had not but “that I saw no indication, on the basis of his physical findings, to even indicate that this man could have a ruptured intervertebral disc with nerve root compression to indicate doing a myelogram.”
The deposition of Dr. William L. Meule-man was taken at the instance of the defendants on September 24, 1956. This doctor is an orthopedic surgeon practicing in the city of Lafayette, Louisiana. He examined the plaintiff on one occasion, September 12, 1955, the plaintiff having been referred to him for evaluation by his attending physician, Dr. Rozas, in Opelousas. When asked what his diagnosis of the plaintiff was, the doctor stated that, “Well, I could not reconcile the complaints with the nature of the injury. I could not substantiate this objectively on examination.” And, when asked what conclusion he arrived at concerning disability, the doctor stated: “I didn’t feel he had any reason for not engaging in gainful employment.”
From the above and foregoing we think it clear that the evidence preponderates at least as much or more so in favor of the defendant as the plaintiff. The latter: has failed to discharge the burden of proof and the judgment must, therefore, be affirmed.
Judgment affirmed.