102 So.2d 776 (1958)
Burley ANDERSON, Plaintiff-Appellee,
v.
Robert PEEK, d/b/a Peek's Auto Service, et al., Defendants-Appellants.
No. 8792.
Court of Appeal of Louisiana, Second Circuit.
April 22, 1958.
Rehearing Denied May 26, 1958.
Writ of Certiorari Denied June 27, 1958.
Thomas W. Davenport, Monroe, for appellants.
Dhu & Lea S. Thompson, Monroe, for appellee.
GLADNEY, Judge.
This action is for the recovery of workmen's compensation and arises from an employment accident which occurred on June 8, 1957. Payment of compensation at the rate of $32.50 per week was voluntarily made to the plaintiff, Burley Anderson, by his employer, Robert Peek, and the insurer, *777 American Hardware Mutual Insurance Company, until August 24, 1957. At that time such payments were discontinued on medical advice the employee was able to fully resume his employment. Alleging himself to be totally and permanently disabled this suit was instituted by Anderson and resulted in the rendition of a judgment awarding compensation as claimed. The defendants have appealed from the decree and appellee has answered the appeal praying the fees of his medical experts be increased from $25 to $50 each.
Admitting to the accident and initial entitlement to compensation, appellants seriously urge the only issue presented herein is whether plaintiff has established his case by showing through a preponderance of the medical testimony disability has persisted after August 24, 1957.
Anderson was employed as a common laborer and mechanical helper at the garage of Robert Peek in West Monroe, where, while shoveling some gravel his foot slipped and he fell backward and suffered an injury to his back. The accident was promptly reported to his employer who sent Anderson to Dr. Ben B. Cobb for treatment. The employee was also treated by Dr. Faheam Cannon, orthopedic surgeon, and he was examined by Drs. J. E. Walsworth and Irving J. Wolff, general practitioners selected by the plaintiff.
The opinions of Drs. Cobb and Cannon hold plaintiff was fully able to perform the duties of his employment after August 24, 1957, and the opinions of Drs. Walsworth and Wolff are to the contrary, it being their expressed belief plaintiff is totally and permanently disabled.
In the reasons for judgment given by the trial court, our brother on the lower bench noted plaintiff had been employed by the defendant, Robert Peek, for more than a year and his conduct subsequent to the accident appeared free of deception. It is our impression, however, that the only attack upon plaintiff's credibility is with reference to inconsistent complaints made to Drs. Cobb and Cannon. The judge found from the testimony of Drs. Wolff and Walsworth plaintiff was disabled and unable to work as of the date of trial, which testimony together with that of plaintiff was, in his opinion, sufficient to entitle plaintiff to a continuance of compensation. The question, however, really is whether or not the testimony of Drs. Walsworth and Wolff has established by a preponderance of the evidence plaintiff was disabled after August 24, 1957. The testimony of Drs. Cobb and Cannon, coupled with the fact Dr. Cannon was the only orthopedist who testified concerning an injury which lies within his chosen field, we think, presents a serious question as to whether plaintiff has made out his case by a preponderance of the evidence.
The rule, as repeatedly held by this and other appellate courts of this state, is that plaintiff in a workmen's compensation suit has the burden of establishing his case to a legal certainty, and conjecture, possibility, or even unsupported probability, are not sufficient to sustain recovery. Beard v. Mathieson Alkali Works, Inc., La.App.1936, 168 So. 730; Roberts v. M. S. Carroll Company, Inc., La.App.1953, 68 So.2d 689; Mouton v. Gulf States Utilities Company, La.App.1953, 69 So.2d 147; Driggers v. Coal Operators Casualty Company, La.App.1954, 73 So.2d 602; Robbins v. Chicago, Mill & Lumber Company, La.App.1954, 76 So.2d 635; Sanders v. Sabine Lumber Company, Inc., La.App.1956, 90 So.2d 472; Bailey v. Aetna Casualty & Surety Company, La.App.1957, 94 So.2d 576; Davis v. Reynolds, La.App. 1957, 96 So.2d 368; Gillespie v. American Bakeries Company, La.App.1957, 98 So.2d 104; Wyatt v. Consolidated Underwriters, La.App. 1957, 98 So.2d 537; Washington v. Swanner, La.App. 1957, 98 So.2d 913; Taylor v. Sam Grimmett, Inc., La.App. 1957, 99 So.2d 365.
It is therefore, the duty of plaintiff in this case to show disability continued after August 24th. In considering whether or not plaintiff has borne this *778 burden, certain legal principles have been enunciated. Thus, the testimony of the attending physician should ordinarily be accorded more weight than that of a physician who has not examined for purposes of treatment. Walker v. Monroe, La.App. 1953, 62 So.2d 676; Roy v. Guillot, La.App.1955, 84 So.2d 469, certiorari denied 1956, Richmond v. New Amsterdam Casualty Company, La.App.1956, 85 So.2d 717. And, where the injury of which complained, falls within a particular field of medicine, the testimony of a specialist in that field is entitled to more weight than that of the general practitioner. Rider v. R. P. Farnsworth Company, Inc., La.App. 1952, 61 So.2d 204; Walker v. Monroe, supra; Green v. A. C. Campbell Construction Company, La.App.1955, 78 So.2d 54; Roy v. Guillot, supra; Gaspard v. The Fidelity & Casualty Company of New York, La.App. 1956, 89 So.2d 445.
The foregoing legal rules seem to have application in the instant case for it must be conceded that neither Dr. Walsworth nor Dr. Wolff made any serious effort to treat Anderson, nor was either a specialist in the field of orthopedics. On the contrary, both Drs. Cobb and Cannon prescribed treatment although Cobb was under the impression the patient was exaggerating his complaints. Dr. Cannon, it should be also noted, is well qualified as an orthopedic surgeon. But, even more significant for resolving the issue, is the extensiveness of the examinations made by the several experts for the purpose of evaluating plaintiff's disability.
Anderson was examined by Dr. Walsworth during the latter part of June and on December 10, 1957, which latter date was the day before trial. The doctor described the examination made as being general in character and stated his findings were referred to the injured areas "which was the lumbosacral area of the right side of the back and to the right hip, and it was suggestive of a sprain of the muscles of that region, the right spinalis muscle and of those fascial planes of the back with injury to the lumbar vertebra, possibly the intervertebral discs there. It was very suggestive of a rupture of the intervertebral disc which in correlation gives you a definite sciatic pain which was referred to the right side. In other words, his complaints were logical for an individual who had suffered a traumatic sprain of the lumbosacral muscles with a ruptured intervertebral disc and associated with the right sciatic pain, the results of which are physically incapacitating for all types of labor, and exercise."
He further testified that upon his examination of December 10th he found the right spinalis muscle definitely rigid which was indicative of deep-seated irritation "which may be caused by trauma, as I felt it was in this case." Upon the examination made in June, treatment was prescribed but the doctor stated such was not successful and when Anderson returned a week later he sent him to Dr. Wolff for examination and treatment. He did not see the patient again until the examination on December 10th. Except for the specific finding of the rigid muscle on December 10th, the witness summarized his opinion to be that plaintiff's complaints were logical and suggestive of an intervertebral disc injury. From this he concluded plaintiff was totally and permanently disabled to perform the type work he had been engaged in. Parenthetically, we note Dr. Wolff who examined plaintiff on December 2, 1957, failed to mention in his testimony any finding of a rigid spinalis muscle.
Dr. Wolff saw the employee on three separate occasions, September 20th, October 10th, and December 2nd. The examination of September 20th followed the taking of the customary medical history. Dr. Wolff later testified the same examination was given on the three occasions plaintiff was in his office. He described the first examination and his findings as follows:
"With the history that this patient gave me, I had him to strip and the following *779 procedure was made: He was a well developed and well nourished adult colored male who lies on the examining table without any apparent discomfort. The pupils were equal and reacted readily to light and accommodation. There was nothing of any significance insofar as the ears, nose and throat were concerned. The heart rate was normal and no murmurs were heard. The lung fields were clear. Upon having the patient to sit up with his legs dangling over the side of the table he complained of pain from about the 1st lumbar vertebra on down. Upon bending forward he complained of some pain but upon bending backwards he complained of a severe pain running down from about the 2nd lumbar region on the right side down the thigh and down the right leg. There was some degree of spasticity of the muscles in this area. Upon having the patient to lie down, the knee extended and then bent and the right thigh bent backwards toward the abdomen, he complained of pain and also upon moderate abduction. He was allowed then to stand up and a definite weakness was noticed from the right 2nd lumbar vertebra down, the patient tilting his vertebra towards the right. The reflexes insofar as the Achilles tendon was concerned, were slightly exaggerated. Upon pressure on driving lick on the heel of the right leg, the patient complained muchly of pain."
He further described his conclusions and diagnosis: "That this individual suffered a very severe contusion of the muscles, ligaments and fascia of the lumbosacral area and that there is some probability that a weakness has occurred in the area between the 3rd and 4th lumbar areas thereby potentially developing a ruptured disc." It was his opinion the employee could not be considered as a candidate for hard labor. By way of further explanation he testified what he meant by potentially developing a ruptered disc was that although the injury has not actually developed into a ruptured disc, it is very likely to do so. He did not prescribe any treatment nor did he make any X-ray studies.
Dr. Ben Cobb, a general practitioner of Monroe, testified he examined plaintiff on June 11th, June 13th, August 5th and August 19th. Asked concerning the type of examination given on June 11th, he testified: "I examined his back primarily and also the inguinal regions where he was complaining of pain, chest, heartI mean all of these things were done rather quickly because they were not the seat of complaint." * * * "Generally, I don't carry out as thorough back examination as Dr. Cannon does because essentially what I'm trying to do in these things is screen these people who are badly hurt from those who just have a slight wrench and usually in back injuries unless the patient is disabled immediately and prostrate, as a rule they are kind of slow rolling problems. They don't get well too fast and they, as a rule, aren't too acute insofar as complete disability is concerned, so I generally check the back for tenderness, for mobility in different directions, and also rotation, take X-rays and check the reflexes." * * * "Also you put them through certain maneuvers, a stretch test for the different nerves, sciatic nerve primarily."
He found his patient free of muscle injury at that time and a neurological examination was essentially negative, in which latter examination tests were made for abnormal reflexes, including the Babinski test and also a sciatic stretch test. X-ray pictures were taken which revealed only minimal arthritis of the spine and there was no pathology of injury disclosed by the X-rays. Dr. Cobb stated that two days later Anderson appeared complaining of more pain in his groin on the right side than on the previous visit, the patient stating his back was improving and the groin was bothering him mostly. The examination failed to reveal any disability. Accordingly, as plaintiff was still complaining, Dr. Cobb referred the patient to Dr. Cannon for *780 orthopedic examination. Dr. Cobb stated Anderson, through his complaints, presented a rather bizarre pattern of pain. The physician testified: "Now, on the first time I saw him he was complaining of pain in the left side of his back radiating to the left hip. On the next occasion or some time laterI'll have to check that, the pain began to move out. It was then in the right side of his back and radiating into the right leg and into the right hip region, and the next time in the right groin primarily; and then on one occasion at least up into the ribs on the right. It is a little hard to chase a pain around like that. It moved so fast I couldn't keep up with it." It was Dr. Cobb's professional opinion that plaintiff was fully able to return to his former occupation.
Dr. Cannon administered to Anderson a complete orthopedic examination on July 22nd, including various antero-posterior, lateral and oblique X-ray pictures of the patient's back. He considered the films negative for any pathology involving the joints or bony structure due to trauma. His examination and results from orthopedic tests applied, presented suggestive evidence of nerve root irritation, the doctor testifying, however, the pattern of pain was rather bizarre with the site of involvement. Also he thought that Anderson had the presence of a depressed Achilles reflex on the right side which was associated with possible depression of sensation. He described his meaning of the bizarre pattern in the following language: "Because the subjective findings did not correspond to the objective findings. The patient subjectively referred to a level in his lumbar spine above that level which should have been involved in order to present the objective findings as listed, namely, the depressed Achilles reflex and a depressed sensation referable to the 1st sacral nerve root." His opinion was that plaintiff's complaints were questionable but he resolved the benefit of doubt in favor of the patient, and based on his report compensation payments were made. By way of treatment a Camp lumbosacral support and a three-inch lift to the heel of the left shoe were prescribed.
Anderson was again examined by Dr. Cannon on August 20, 1957, at which time a complete examination was again given with some objective findings which the doctor considered of no significance. As a result of the report of this examination made to the compensation insurer indicating plaintiff was fully able to return to work, compensation payments were discontinued on August 24th. Dr. Cannon's findings on the last examination included suggestive tenderness at the 12th dorsal, 1st lumbar and 2nd lumbar levels with some restriction on forward flexion, and also he thought the Achilles reflexes were equivocally depressed to a mild degree on the right side. However, he insisted these findings were insignificant and had no relation to Anderson's ability to resume his employment.
After carefully reviewing the testimony of the medical experts, we are of the opinion the preponderance of the testimony shows plaintiff was as of August 24, 1957, fully able to resume his regular employment. It must be observed that plaintiff was fifty-two years of age at the time of his injury and a person of that age can be expected to experience some mild transitory pain and discomfort in his work, whether it be common labor or otherwise. Certainly, the evidence presented in this case is insufficient to support any diagnosis of a ruptured intervertebral disc and we think the medical testimony indicates plaintiff initially suffered a wrenched or sprained back, from which he had fully recovered at the time his compensation payments were discontinued.
For the foregoing reasons, the judgment from which appealed is annulled, reversed and set aside, and it is ordered that there be judgment in favor of defendant, rejecting the demands of plaintiff, at his cost.