126 So.2d 412 (1960)
John MORRIS, Plaintiff-Appellant,
v.
SUPREME BEDDING & FURNITURE MANUFACTURING CO., Inc., Defendant-Appellee.
No. 9360.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1960.
Rehearing Denied February 2, 1961.
*413 Dhu and Lea S. Thompson, Monroe, for appellant.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellee.
AYRES, Judge.
Plaintiff seeks, by this action, to recover of his former employer workmen's compensation at the maximum statutory rate as for total and permanent disability, as well as hospital and medical expenses, because of accidental injuries allegedly sustained in the course and scope of his employment May 12, 1959.
The defense is that plaintiff recovered from all the ill effects of his injuries prior to August 10, 1959, to which date he was paid compensation and expenses for medical treatment. After trial, the court concluded plaintiff had not established he was disabled as the result of the accidental injuries sustained by him beyond the date he was paid compensation and, accordingly, rejected his demands. From the judgment thus rendered, plaintiff appealed.
The decisive question is whether plaintiff has recovered from his injury or continues to be disabled. The issue presented is, therefore, one purely factual in nature and we are thus confronted with the proposition as to whether or not there is manifest error in the findings of fact and conclusions reached by the trial court.
The material facts as to the occurrence of the accident may be first briefly stated. Plaintiff was employed by the defendant to build a platform the day before he sustained accidental injuries. About 8:45 a.m., plaintiff, while on his knees and engaged in cutting, laying, and nailing the flooring on the platform, reached to his *414 side and then backward for a Skillsaw, an electrically-operated handsaw, whereupon he experienced severe pain in his back. Nevertheless, he continued with his work and completed the work about 11:45 a.m. He then made a report of the accident to his superior who advised him to see Dr. Fred W. Sartor. Plaintiff, nevertheless, loaded his tools and equipment in his vehicle and returned home. On the following morning, however, he reported to Dr. Sartor.
To establish his claim, plaintiff produced the expert testimony of Dr. A. Scott Hamilton, an orthopedist, Dr. Frederick F. Millsaps, Jr., a radiologist, and the testimony of Drs. J. E. Walsworth and Irving J. Wolff, general practitioners, as well as the testimony of himself, five friends and neighbors. Defendant produced the testimony of Dr. Fred W. Sartor, a general practitioner, and Dr. T. W. Meriwether, an orthopedist, treating physicians, and Dr. Roy H. Ledbetter, Jr., also an orthopedist. Dr. Millsaps performed a myelogram. The testimony of Drs. Ledbetter, Walsworth, Wolff, and Hamilton was predicated on examinations made for that purpose.
That he sustained a ruptured or herniated intervertebral disc at the level of the fourth or fifth lumbar vertebrae is the basis of plaintiff's primary complaint of disability.
Plaintiff was given a general physical examination by Dr. Sartor May 13, 1959, followed by an x-ray examination two days later. A diagnosis was made that plaintiff had sustained an acute strain of the back as a result of which he was, at the time, disabled to work. Physiotherapy treatments were administered and plaintiff fitted with a lumbosacral belt. The treatments continued until July 13, 1959. Nevertheless, muscular spasm persisted in the affected area. Limited flexion of the back was noted attributable to plaintiff's complaints of pain. There was, however, no radiation of pain to the lower extremities served by nerves emanating from the spinal cord indicative of a herniated disc. From the examinations made of plaintiff, Dr. Sartor concluded plaintiff had not sustained a ruptured or herniated disc.
Plaintiff, not having apparently responded completely or satisfactorily to the treatments administered, was referred by Dr. Sartor to Dr. Meriwether, first, on June 23, 1959, for examination, and then, on July 13, 1959, for further examination and treatment. As a result of the first of these examinations, there was disclosed, on palpation, a moderate degree of muscle tightness, with very slight muscle spasm. Extension and flexion of the back were limited by approximately 25 percent and 50 percent, respectively, attributable to complaints of discomfort on both sides of the lower back. No symptoms, on that occasion, were disclosed warranting a finding of a disc injury and Dr. Meriwether expressed the opinion plaintiff had suffered only a mild back sprain. The x-rays disclosed no evidence of fracture or other recent trauma or significant narrowing of an intervertebral interspace, but disclosed hypertrophic arthritis, to a marked degree, involving the entire lumbar spine. There were no findings indicative of, or commensurate with, the existence of a ruptured disc. According to this witness, plaintiff's complaints were due to the existence of arthritis, probably aggravated at the time by tension.
However, on the subsequent examination, Dr. Meriwether became suspicious that plaintiff had sustained a ruptured disc. A myelogram was suggested which was performed by Dr. Millsaps, witnessed by Dr. Meriwether, July 15, 1959, at the St. Francis Hospital. This myelogram disclosed, according to the testimony of Dr. Millsaps, a very tiny anterolateral defect on the left of the fourth lumbar interspace which could possibly have been caused by some external pressure applied to that area. The myelogram, however, neither ruled out nor established the presence of a herniated disc, the ultimate diagnosis of which, according to Dr. Millsaps, was dependent upon corroboration by clinical evidence such as radiation *415 of pain along the course of nerves arising in the spinal cord, aggravated or increased by coughing, sneezing, or physical exercise, particularly on manipulation of the lower extremities, as well as muscle atrophy and weakness in the areas served by the nerves involved. Dr. Meriwether's conclusions as to the result of the myelogram were in agreement with those of Dr. Millsaps. Dr. Meriwether, however, on further physical examination, was unable to make any objective findings corroborative of the herniated disc. Hence, he concluded, on the basis of the myelogram and the results of his examinations, that plaintiff had not sustained a disc injury. Moreover, the later x-rays disclosed no significant changes in the arthritis prevalent in plaintiff's spine. It was concluded, accordingly, that that condition was chronic and had not been adversely affected nor aggravated by plaintiff's accidental injuries.
Dr. Ledbetter examined plaintiff August 11, 1959. He found no evidence to suggest that plaintiff had a protruded or ruptured intervertebral disc.
Dr. Hamilton examined plaintiff November 3, 1959, and testified.
"There was a defect in the column of pantopaque, the dye which is injected to outline the interior of the spinal canal, which simply on the basis of probability would more likely be due to a herniated nucleus pulposus, that is, a ruptured disc than to any other cause."
Corroboration of the clinical findings, made by Dr. Hamilton, as to the existence of a disc injury, was limited to muscle spasm on both sides of the lumbar spine and a depressed right Achilles reflex. This witness noted, however, the presence of osteoarthritis, on the date of his examination, as in approximately the same degree as reflected by the earlier x-rays, "with possible aggravation as a result of trauma."
Dr. Walsworth, after an examination of plaintiff January 15, 1960, expressed the opinion that the clinical evidence referred directly to a finding of a traumatic ruptured nucleus pulposus and that, as the result of such injury, plaintiff, in his opinion, could not sustain himself by the performance of manual labor. Dr. Wolff, after an examination of the same date, expressed the opinion that plaintiff suffered a severe contusion of the fascia, ligaments of the lumbosacral area and that pain suffered in plaintiff's legs indicated a disc injury. He concluded, also, that plaintiff was disabled to carry on the duties of carpenter or painter.
The consensus of the lay testimony is that plaintiff was formerly a good worker but had not worked since sustaining accidental injuries.
In giving consideration to and weighing the evidence in workmen's compensation cases, there are certain well-established rules by which we must be guided. The first is that a compensation claimant carries the burden of proof and must establish his claim to a legal certainty, and by a reasonable preponderance of the evidence, and that the establishment thereof, only to the extent of possibility or probability is insufficient to sustain a judgment in his favor. Card v. Southern Builders, Inc., La.App. 2d Cir., 1960, 117 So.2d 675; Mitchell v. Brogdon, La.App. 2d Cir., 1958, 106 So.2d 531; Roberts v. M. S. Carroll Co., La.App. 2d Cir., 1953, 68 So.2d 689.
Particularly, are we here confronted with the rules pertaining to the weight that should be given the testimony of the medical experts. In weighing medical opinions, it has been frequently held by our courts that the testimony of an attending physician should ordinarily be accorded more weight than that of a physician who has made an examination for purposes other than for treatment. Richmond v. New Amsterdam Casualty Company, La. App. Orleans 1956, 85 So.2d 717; Roy v. Guillot, La.App. 2d Cir., 1955, 84 So.2d 469; Walker v. Monroe, La.App. 2d Cir., 1953, 62 So.2d 676. And, where the injury complained of falls within a particular field of *416 medicine, the testimony of a specialist in that field is entitled to more weight than that of the general practioner. Anderson v. Peek, La.App. 2d Cir., 1958, 102 So.2d 776; Gaspard v. Fidelity and Casualty Co. of New York, La.App. 1st Cir., 1956, 89 So.2d 445; Green v. A. C. Campbell Construction Co., La.App. 2d Cir., 1955, 78 So.2d 54. Special knowledge and skill, with regard to an injured back, has been held to come within the field of orthopedic specialists, whose testimony, in a workmen's compensation case involving such an injury, is entitled to greater weight than that of a general practitioner. Scott v. Roy O. Martin Lumber Company, La.App. 2d Cir., 1959, 116 So.2d 726; Edwards v. Aetna Casualty & Surety Company, La.App. 1st Cir., 1959, 108 So.2d 126; Rider v. R. P. Farnsworth Co., La.App. 2d Cir., 1952, 61 So.2d 204.
The foregoing legal rules appear to have application in the instant case for it must be conceded Drs. Wolff, Walsworth, and Hamilton, as was Dr. Ledbetter, were only examining physicians, and that Drs. Meriwether and Sartor, as treating physicians, had the greater opportunity, through their examinations and observations, and through their course of treatments, to diagnose and evaluate plaintiff's complaints and to determine, vel non, the nature and extent of his disability. It can only be concluded, from the testimony of these attending physicians, that plaintiff's injury consisted of only a mild back sprain from the effects of which he had recovered during the period he was paid compensation. Moreover, it can only be concluded, from Dr. Hamilton's testimony, there existed only a mere possibility, or, at the most, a probability, plaintiff sustained a ruptured or herniated disc.
Nor do we find the medical testimony so conflicting and inconclusive as to warrant an award of compensation upon a basis of the lay testimony.
From a thorough consideration of all the evidence in the case, it would appear that whatever complaints or disability plaintiff has suffered since the cessation of payment of compensation are due to the presence of arthritis in his spine, which was neither worsened nor aggravated by the accident.
After giving due weight to all the testimony, we are not only unable to find any manifest error in the conclusions reached by the trial court but are also of the opinion plaintiff has not sustained his burden or proof and established the reality of his claim or a continuance of his disability by a reasonable preponderance of the evidence to a legal certainty as required by law prerequisite to his recovery of workmen's compensation.
Hence, the judgment appealed is affirmed at plaintiff-appellant's cost.
Affirmed.