YARRUT, Judge.
Plaintiff sued Hauser Printing Company, Inc., her employer, and Liberty Mutual Insurance Company, its insurer, for personal injuries allegedly suffered on June 18, 1962, in the course of her employment.
She sued ex delicto or, in the alternative, under Louisiana’s Workmen’s Compensation statute. The lower court maintained exceptions to her ex delicto claim, and lim *830 ited any recovery to the Workmen’s Compensation statute.
Following the trial the District Judge rendered judgment for Plaintiff under the ■Compensation statute, awarding her 200 weeks of compensation at 30% of 65% of her weekly wage of $70.00, permanent partial disability for loss of the use of her arm, together with medical expenditures of $485.-■00.
Plaintiff has appealed devolutively, claiming compensation for 400 weeks; and De■fendants appealed suspensively for a complete reversal.
Plaintiff, aged 64 was a retired school teacher of civics, typewriting and stenography. She took occasional jobs to supplement her income, one of which was with Hauser Printing Company for stenographic work.
Defendants admit that, on or about June 18, 1962, Plaintiff was so employed; had been since June 11 of that year at a weekly salary of $70.00; that on June 18, 1962, Plaintiff suffered an accident while seated at her desk performing her stenographic duties, when a clift board or “skid” fell against the back of her roller chair, and pushed her forward causing her left foot to jam against the desk; that she was promptly sent to the office of Drs. Houston, Roy, Faust and Ewin, and treated by Dr. Houston, a surgeon, for injuries to her left foot.
Plaintiff testified she sustained injuries to her left leg and right arm on June 18, 1962, and was promptly sent by her employer to Dr. Houston’s office; that she returned to Dr. Houston’s office on June 19, 1962, for further treatment and that, on the latter date, she performed all her stenographic duties; that she experienced pain in her arm at the time of the accident, but .admitted her only complaint to Dr. Houston was about her left foot. She did not complain about her arm injury either to ,Dr. .Houston .or to 'the other employees who immediately came to her aid following the accident.
Dr. Houston testified he treated her for her foot injury only, as that was the only portion of her body she complained about. He bandaged her foot and suggested she return the following day (June 19) for further treatment to her foot; explaining that her foot condition would not prevent her from performing stenographic work.
On June 19, 1962, Plaintiff returned to work and performed all her duties the entire day. She also visited Dr. Houston’s office for treatment to her foot and testified her arm was in severe pain at that time, yet made no mention of it to the doctor or his attending nurse. Pier explanation was that she was too upset about her foot injury to complain about her arm.
The only evidence of Plaintiff’s injury to her arm is her testimony that, about 4:00 a. m. June 20, 1962, she must have rolled over on her arm, as she awoke screaming with severe pain in the right elbow. Plaintiff’s sister, who occupied an adjoining bedroom, testified she was awakened by Plaintiff’s screams and went to help her.
Plaintiff reported to work the morning of June 20th with a badly swollen arm and was again sent to Dr. Plouston’s office where x-rays disclosed a badly comminuted fracture of the olecranon process (part of her elbow) ; the bone fragments, separated a half-inch, requiring immediate surgery at Touro Infirmary, which was performed by Dr. H. R. Soboloff, orthopedic surgeon.
By late August Plaintiff had regained all motion in her arm except for a 10-to-15% disability. By October 24, 1962, she was able to return to her stenographic duties, and was finally discharged by Dr. Soboloff on December 12, 1962 with the advice that she could return to work. Dr. Soboloff’s opinion was that she had an approximate 10-to-15% disability of the right arm. Summarizing the medical testimony, we find:
Drs. A. N. Houston, a surgeon; William A. Roy, a surgeon; H. R. Soboloff, an orthopedic surgeon; Ray Haddad, an orthopedic surgeon; and Dr. Blaise Salatich, all *831 testified that the arm fracture was about Y2 inch in width and extremely painful.
Dr. Soboloff said every movement of Plaintiffs arm would be painful. Both he and Dr. Houston stated she could not do stenographic work during an 8-hour day June 19th without suffering pain in her elbow. Dr. Soboloff further testified Plaintiff could do typing and shorthand on June 19th only under massive doses of narcotics; yet, Plaintiff worked the entire day of June 19th, performing her duties (except when she visited Dr. Houston’s office). The record is devoid of any testimony that Plaintiff used narcotics in order to work on June 19th.
All doctors testified the injury to Plaintiff’s arm was a major fracture, and most unusual for a person suffering such an injury not to say anything for two days. All testified that such a fracture would cause immediate pain with swelling, ecchymosis and hemorrhaging around the joint, together with restriction of motion.
Plaintiff testified she worked lVá days following the injury before the fracture was corrected by surgery, and now contends her arm is too painful to permit work, even chough the residual disability is relatively jninor.
While the medical testimony alone is sufficient to negate Plaintiff’s claim that her arm was injured in the accident of June 18, 1962, Plaintiff’s testimony was vacillating. In an oral pretrial deposition, given in January of 1964, she testified she had not been able to do any typing or shorthand following the accident. At the trial, she admitted she did stenographic work for the MidWinter Sports Association, whose Executive Secretary testified Plaintiff performed her full stenographic duties, without any complaint, all in November and December of 1962. This period was before treatment by Dr. Salatich, and even before the medical discharge by Dr. Soboloff. Dr. Soboloff testifed that Plaintiff could return to work, which negated the testimony of Plaintiffs sister and friends that, because she suffered constantly from pain in her arm, she was unable to work as a stenographer. The sister further testified that Plaintiff could not bathe or dress herself, and had to be fed by her.
 The primary issue here is whether Plaintiff sustained the burden of proof that the injury to her arm and elbow was suffered in the course of her employment; conjecture and unsupported probability are not sufficient to discharge this burden. Anderson v. Peek, La.App., 102 So.2d 776; Keener v. Fidelity & Casualty Co. of New York, La.App., 96 So.2d 509; Henderson v. New Amsterdam Casualty Co., La.App., 80 So.2d 438.
The district .judge gave no reasons for his finding that Plaintiff suffered the disabling injury to her arm and elbow on June 18, 1962, when she met with the accident. The unanimous opinion of the medical experts was that the arm and elbow injury was so painful that Plaintiff could not help but know it. Dr. Salatich testified that Plaintiff was totally and permanently disabled, while the other doctors gave her disability as from 15 to 30%. We conclude that, in some manner, Plaintiff must have fallen or twisted her arm while alone in her bedroom, or elsewhere, on the night' in question, perhaps while half-asleep.
The evidence is abundantly clear that' Plaintiff has not sustained the burden of proof, by a preponderance of evidence, that she suffered the disabling injury to her arm and elbow on June 18, 1962, or at any time while engaged in performing her stenographic duties for her Defendant employer.
The judgment of the District Court is reversed, and judgment rendered in favor of both Defendants dismissing Plaintiff’s suit at her cost in both courts.
Judgment reversed.