LOTTINGER, Judge.
The trial judge rendered written reasons in this matter which we herewith set out in full:
.“The plaintiff brings this suit under the provisions of the Workmen’s Compensation Act of the State of Louisiana LSA-R.S. 23:1021 et seq., seeking the recovery of compensation for permanent and total disability not in excess of 400 weeks, and, in the alternative for permanent partial disability not in excess of 300 weeks,
“He alleges while working in the scope and course of his employment for the defendant corporation, he .was injured on December 2nd, 1948; November 6, 1948 and July 18, .1950, and on the last mentioned date he was discharged by the defendant employer.
“It is further alleged as a result of the accident of the last mentioned date, or July 18, 1950, the plaintiff sustained an acute epedidymitis and severe shock to his nervous system.
“The defendant admits in the answer that on December 2, 1948, the plaintiff fell against a pipe and suffered some bruises from which he recovered, and that on May, 23,. 1949, the plaintiff : sprained his left wrist while in its employ, and he received compensation therefor and returned to .work — then it is specifically denied that the plaintiff received any injury while in the defendant’s, employ in July 1950. It is further set forth in the .answer that plaintiff .at the time he left defendant’s employ ■in July 1950 admitted he was ill. from causes other .than an accident suffered during .the course of his employment.
“Further, the defendant filed a plea of prescription as to the injuries suffered from accidents of December 2nd,’ 1948, and November 6, 1948, declared on in the petition. I referred these pleas to the merits of the case. ’
“Since the suit, was not filed , until July 17, 1951, it is obvious that the plea of prescription of one year is good as to. injuries suffered from the accident of December 2nd, 1948 and November 6th, 1948 as no showing has been made by the plaintiff that compensation payments were made for injuries from these accidents which would interrupt the one year prescription provided by the Workmen’s Compensation Act, Consequently, the only matter to be determined by the Court is — did the plaintiff suffer an injury in July 1950 while in defendant’s employ for which he is entitled to compensation.
This cause was tried on March 5th and' 6th, 1952, and at that time I left the case open until Friday, April 11, 1952, in order that the plaintiff might introduce interrogatories of Dr. Mattes of New Orleans, in order that said interrogatories might be filed in evidence. A commission was issued to a Notary Public for the Parish of Orleans^' which was returnable on the 7th day of April, 1952, however, the testimony of Dr. Mattes was not taken before the Notary Public until April 30, 1952,. long after the interrogatories were made returnable and after the commission of the Notary Public had expired. Consequently, whén the interrogatories of Dr. Mattes were, filed in evidence said interrogatories were objected to by Counsel for defendant because taken after the expiration date of the commission of the Notary Public before whom the said interrogatories were *375 taken. I permitted the interrogatories to be introduced into evidence subject to this objection by Counsel for defendant, and after the briefs were filed by opposing Counsel, I reached the conclusion that since the commission of the Notary Public to take the interrogatories had expired when said interrogatories were taken that they were not admissible in evidence. I reached this conclusion under the holding of the 1st Cir. Ct. of App. in the case of Arceneaux v. Louisiana Highway Commission, La.App., 12 So.2d 733, but due to the fact that I felt certain the delay in the taking of Dr. Mattes’ testimony was brought about by his illness, I re-opened the case and granted additional time for interrogatories to be propounded by the plaintiff to Dr. Mattes. The testimony of Dr. Mattes was taken on January 28, 1953, and filed in this record January 30, 1953, and it is only this second testimony that will be considered in connection with the determination of this case.
“It is admitted that the defendant is engaged in a hazardous occupation, and that-the plaintiff was in its -employ in July 1950.'
“While it is alleged that the plaintiff was injured on July 18, 1950, the evidence reflects it could not have been on said date, for the reason that the plaintiff worked, eight hours on July 18th and he is contending that on the date he was injured he worked only five hours on July 20, 1950, and this is the date that will have to be reckoned with in reaching a conclusion as to whether or not the plaintiff was injured while in the defendant’s employ.
“The plaintiff’s testimony shows that at the time of the alleged injury, he was engaged in removing loose paper from a cutter and placing it on what is known as flats, and while so doing, one of these flats struck him in the side causing the injury for which he seeks recovery.
“Plaintiff further testified that after receiving said injury he reported this to his foreman, Mr. Willie Tullos, and was instructed to go home, which he started to do, but then went to the hospital, where he was treated by a Doctor on the same night, and told to go to his.home and apply hot applications to his side. He says he did return to his home and apply these hot applications for a period of ten days, and in this he is corroborated by his wife. He further testified that he went to the Veterans’ Hospital in New Orleans where he stayed for several months, and in March, 1951, applied for reinstatement on his job, but was refused on the ground he was physically unable to perform his duties. In addition to testifying that he reported his injury to his foreman, Mr. Tullos, the plaintiff further testified that immediately after he was injured, he told one of his fellow employees, Charles Jackson, of said injury.
“There is testimony in the record to show that it is a rule of the defendants corporation, of which all employees are made cognizant, that when a man is injured at his work he is to immediately report to his foreman, and the foreman then sends the employee to the time office from where he is sent to the hospital for treatment, and as a matter of fact,, the testimony of the witnesses reflects on a-prior occasion this same plaintiff was injured and was sent by his foreman to the time office from where he was taken to the hospital.’ The testimony of Mr. Willie Tullos, plaintiff’s foreman, reflects that on the night of July 20th, at about 7:00 P.M., the plaintiff came to him and complained that he was ill, whereupon the foreman instructed him that he could go home, and it is shown that this is the procedure that is followed when a man reports that he is ill. The foreman’s testimony is very positive on that point that the plaintiff did not report to him that he had been injured. In addition to this, the fellow employee, Charles Jackson, to whom plaintiff stated he had reported he had been injured, denied that, the plaintiff ever made any such statement to him. As a matter of fact, several witnesses who worked in the same locality of the paper mill, which is known as the finishing room, testified that they had never heard of this plaintiff being injured in July. Several of them said they had heard of him being injured on a previous occasion.
*376 “While the plaintiff testified he went to the hospital immediately after leaving his employment on the night of July'20, 1950, I note from the testimony of Dr. Lafferty, who had treated the plaintiff in June of 1950, and for that matter, during July 1950, that the clinical record of the hospital showed that Dr. Lafferty was the only Doctor who treated the plaintiff during the months of June and July 1950. Plaintiff’s testimony is to the effect that Dr. Morgan treated him on the night of July 20, 1950, but Dr. Morgan’s testimony is to the effect he treated plaintiff from late 1947 to early 1950, and since the clinical record of the hospital failed to show that plaintiff received any treatment on the night of July 20th, 1950, I have serious doubts that he reported to the hospital on said date as testified to by him. On the morning of July 21, 1950, the plaintiff did go to the hospital and saw Dr. Lafferty, who had been treating him for sometime, and at that time, which was one day after the alleged injury, Dr. Lafferty found the patient to be suffering from the following symptoms; Abdominal pain, which he attributed to umbilical hernia. At this time the plaintiff did not complain to Dr. Lafferty that he was suffering as a result of an accident, for it is explained by this Doctor he filled out insurance blanks for the patient, which covered disability from sickness or an accident not connected with his employment. The notes taken by this Doctor at this time showed the plaintiff became ill while at work and this was the reason why this Doctor filled out the insurance blanks for him. It is interesting to note that the plaintiff actually drew benefits under his Provident insurance policy for a period of some eight months, and it was only after the payments thereunder terminated, that he applied for re-instatement in his job with the defendant corporation.
“I further note from the testimony of Dr. Lafferty that he treated this plaintiff on the 24th day of June 1950, practically one month prior to this alleged accident, and at said time he found that the right testicle of the plaintiff was enlarged. It must be borne in mind that the plaintiff is seeking recovery here for disability caused by acute epedidymitis of his right testicle, and this as I understand it, consists of a bloody mass accumulated in the scrotum, which causes severe pain. Certainly if Dr. Lafferty found that on June 24, 1950, practically a month prior to the alleged accident, that plaintiff’s right testicle was slightly enlarged, then it is clearly possible that he was suffering from acute epididymitis at that time. I further note that Dr. Morgan testified in late 1947 or early 1948 that this plaintiff complained of scrotal pain, which was supposed to have been due to an injury — this, plaintiff could have been suffering from acute epedidymitis at that time.
“I further note that when plaintiff was examined by Dr. Harrell in March 1951, and found to have had an umbilical hernia, that he did not tell this Doctor he had suffered an injury in July 1950. The only other Doctor who testified in the case was Dr. Mattes, whose testimony was taken by interrogatories as heretofore explained. This doctor was of the opinion that the epedidymitis was caused as a result of trauma, but his conclusion was reached on the history which was given to him by the plaintiff. He did not see this plaintiff until almost a year after the alleged accident, and I note Dr. Lafferty testified it was impossible for a physician to determine the epedidymitis had been caused by a trauma a year prior to the examination. I further note that Dr. Mattes testified that epedidy-mitis could be caused by infection. In addition to this, the plaintiff has testified he" received a blow in his lower abdomen which brought about this epedymitis, and on page 13 of the transcript of the testimony of Dr. Mattes he was asked the direct question if a blow in the lower abdomen other than directly to the testicle could cause epedidymitis, and his answer to the question was in the negative.
In view of the testimony in this record, which I have heretofore sought to fairly analyze, it is impossible for me to reach the conclusion, even if plaintiff is suffering from acute epedidymitis, that it was brought about by accidental injury *377 suffered by him in the course and scope of his employment.
I recognize . the proposition that there is precedent in our jurisprudence for the application of the general principle that the testimony of a plaintiff alone is sufficient to make out his case, but this is subject to the further condition that there is nothing to discredit the plaintiff’s account of the accident and the resulting disability and - his 'statements are supported by the surrounding circumstances. As heretofore pointed out, there is much to discredit plaintiff’s account of this accident and' resulting disability, and as further pointed out, hi's statements as to the accident and resulting disability are not supported by the surrounding cicumstances. See Franks v. Dept. of Highways for Louisiana, La.App., 43 So.2d 491; O’Connor v. American Automobile Insurance Co., La.App., 32 So.2d 624.
I recognize the fact that this is a compensation case and in a construction of our Workmen’s Compensation Act the Courts of this, State have been liberal indeed, but such liberality has not and should not reach the point where a plaintiff in a case of this character be npt required to prove by a preponderance of the evidence his disability and fúrther relate such disability to the accident and the resulting injury suffered in the Course of his employment. Even though the present plaintiff might have proven that he is suffering from a disability which prevents him from doing manual labor, it was further- incumbent upon him to establish a causal connection between the accidental injury of July 20, 1950, and his present disability.
“From my appreciation of the evidence in this case I am firmly convinced that the plaintiff has failed to establish a causal connection with the accident and his disability, which is essential to his recovery. As a matter of fact, all of the medical testimony, as well as the law witnesses, definitely preponderates against plaintiff’s contention. Woods v. Brezner, La.App., 62 So.2d 131.
“Accordingly for the above and foregoing reasons,-there will be judgment herein rejecting the plaintiff’s demand.”
We have carefully examined the record and not only do we fail to find any manifest error in the findings of the trial judge but have concluded that the evidence abundantly substantiates his conclusions. For these reasons we adopt his opinion as our own and the judgment appealed from is therefore affirmed.
Judgment affirmed.