LANDRY, Judge ad hoc.
Plaintiff Polien Jones instituted this suit against his employer, Olinde Hardware & Supply Company, Inc., and Olinde’s compensation insurer, Employers Mutual Liability Insurance Company of Wisconsin, to recover from said defendants workmen’s compensation benefits and interest, penalties and attorney’s fees for alleged arbitrary failure to pay compensation.
The lower court rendered judgment in favor of plaintiff granting plaintiff compensation at the rate of $31.20 per week for total disability not to exceed 400 weeks but rejected plaintiff’s demand for interest, penalties and attorney’s fees. Defendants have appealed the judgment of the lower court awarding plaintiff compensation and plaintiff has answered the appeal reurging his claim for interest, penalties and attorney’s fees.
The evidence shows that on November 15, 1957, while in the act of unloading sheet rock from a truck, plaintiff sustained a lumbar strain (low back injury) while in the course of his employment by defendant Olinde Hardware & Supply Company, Inc. At the time of the accident, plaintiff remarked to a co-worker that he had hurt his back but remained on the job and completed the day’s work.
It is undisputed that plaintiff has held numerous jobs as laborer since his injury which circumstances has led defendants to contend plaintiff was never disabled. On the contrary, plaintiff readily concedes he has worked since his injury but maintains he was compelled to do so because of economic necessity. Plaintiff further contends that although he has worked since the accident, he has done so in pain and, therefore, is disabled and entitled to compensation.
Plaintiff testified that the day following his injury, namely, November 16, 1957, he consulted Dr. C. H. Mosely, who found plaintiff had suffered a back sprain. Dr. Mosely prescribed medication, heat treatment and rest. Plaintiff returned to Dr. Mosely November 19, December 26 and 30, 1957, and finally on January 6, 1958. According to plaintiff, the visits to Dr. Mosely were not productive of relief and in an attempt to alleviate his suffering, he consulted Dr. A. K. Fleet who did not examine him but who, based on plaintiff’s complaints, referred plaintiff to the Charity Hospital in New Orleans. In compliance with Dr. Fleet’s recommendations, plaintiff made two trips to the Charity Hospital but neither the dates of these visits nor the results thereof are in the record. He stated he sought employment in November, 1957, because of the necessity to support his wife and two children but he constantly worked in pain and frequently had to lay off because of the pain in his back. He readily admitted that in an upright position he could work comparatively free of pain but that heavy lifting and prolonged stooping, bending or sitting produced pain which could only be relieved by the constant use of medication prescribed by Dr. Mosely. He stated that on the numerous jobs he held he often complained *604 to his superiors of the pain and on at least one or two occasions was permitted to leave the job to secure medicine for his relief.
Dr. C. H. Mosely testified to the effect he saw and treated plaintiff on the dates mentioned and, whereas he originally was of the opinion plaintiff would he disabled for only one week, he later concluded plaintiff’s disability continued until January 6, 1958.
Dr. A. K. Fleet corroborated plaintiff’s testimony in that he stated he did not examine plaintiff but merely advised plaintiff to seek treatment at the Charity Hospital in New Orleans.
Dr. Thomas Campanella, an orthopedic specialist, testified he first examined plaintiff on February 27, 1958, at which time he found plaintiff was suffering from weakness and pain in his back at the belt line. The only objective symptom observed by Dr. Campanella consisted of tenderness over the lumbarsacral area. Predicated upon this objective finding and plaintiff’s related subjective symptoms, he concluded plaintiff had sustained an acute strain of the lumbarsacral joint with possible para-vertebral muscle strain. At this time, Dr. Campanella felt plaintiff had recovered from his injuries and only needed to exercise the affected muscles to stretch them to their former condition. Dr. Campanella again examined plaintiff on May 27, 1958 and found plaintiff exhibited the same complaints as before but in addition noted muscle spasm which was not present on his previous examination. He recommended that plaintiff continue work as he considered exercise the best therapy for plaintiff’s condition. He stated he was fully aware that continued exertion would be painful but, nevertheless, urged plaintiff to resume work because he was of the opinion that use of the back muscles would cause them to stretch and eventually eliminate the pain. Dr. Campanella also found plaintiff to be suffering with a congenital deformity consisting of a widening of the transverse processes of the 5th lumbar vertebra which condition is medically defined as sacralization. According to Dr. Campanella, the existing sacralization would not of itself produce pain but its presence would render an individual more susceptible to injury from trauma and such a condition coupled with trauma would be likely to cause pain in the affected region. His testimony was to the effect that although he could not attribute plaintiff’s pain directly to the injury, plaintiff’s complaints of pain were consistent with the history of trauma related by plaintiff and the condition of plaintiff’s back.
The testimony of numerous lay witnesses was adduced on the question of plaintiff’s ability to work and with regard to the issue of whether or not plaintiff was able to perform his work without pain.
Howard Bamber, a carpenter foreman under whom plaintiff worked following his injury, testified that plaintiff was a willing and eager worker and tried to perform all work allotted him but that plaintiff frequently complained of pain in his back. He also observed plaintiff taking pills on numerous occasions. Bamber further noted that plaintiff walked with a slight limp and stated that on the instances when plaintiff would complain of pain, he noted that plaintiff seemed to “slow down a little in his work”.
Raiser Rachal, a co-worker, employed with plaintiff on the job supervised by Bam-ber, testified substantially to the same effect as did Bamber.
One Joseph Atkins who worked with plaintiff in December, 1957, testified plaintiff was compelled to resign employment with W. R. Aldrich Construction Company because plaintiff was physically unable to perform heavy manual work such as rolling a loaded wheelbarrow or pouring concrete and that plaintiff was unable to bend his back without pain.
Defendants introduced the testimony of Sam Koltum, Labor Market Analyst, Lou *605 isiana Division of Employment Security, who testified that plaintiff applied for work on November 26, 1957, and in order to make such application, plaintiff was required to certify that he was able to work.
One J. M. B amber testified plaintiff worked for him approximately one month prior to the trial of this case and that he considered plaintiff one of the best workers he ever employed. He never heard plaintiff complain of pain while on the job and always considered plaintiff’s work satisfactory.
C. H. Morton, called as a witness on behalf of defendants, stated he employed plaintiff during the period February 16, 1958 to March 5, 1958 as a laborer on the construction of residences. He stated plaintiff’s work was satisfactory; that plaintiff worked an eight hour day and during the period mentioned worked a total of 18 hours overtime.
The evidence shows plaintiff was employed at a wage of $1 per hour at the time of the accident and that immediately prior to trial plaintiff was earning $1.40 per hour. Defendant contends that the fact that plaintiff is presently earning more than he earned on the date of the accident is inconsistent with plaintiff’s claim of disability. Defendant further contends the evidence as a whole shows plaintiff is able to work free of pain. Finally, defendant maintains that if plaintiff is found to be suffering pain there is nothing in the record to indicate such pain is a result of the injury received. In this connection, defendants rely upon the testimony of Dr. Campenella to the effect that he found a 5 to 10 per cent disability in plaintiff which, according to defendants, was based solely on the subjective symptoms related by plaintiff.
The fact that an employee is able to earn a greater wage following an accident than he was paid at the time of injury does not bar his recovery of workmen’s compensation benefits provided he is actually disabled. This principle of law is so elementary as to require no citation of authority in support thereof.
Regarding defendants’ contention the testimony of Dr. Campanella shows that Dr. Campanella found a 5 to 10 per cent disability predicated solely upon the symptoms narrated by plaintiff, we believe a fair analysis of the doctor’s evidence showed he based this diagnosis not only upon the subjective complaints of plaintiff but also upon the soreness and tenderness found in the area of the injury. Defendants intimate the pain which plaintiff experiences, if any, is caused by the congenital condition found by Dr. Campanella but the testimony of Dr. Campanella does not corroborate this position. Dr. Campanella’s testimony is to the effect that the congenital condition could not of itself cause pain. His testimony further shows the muscle spasm discovered on his examination of May 27, 1958, is usually caused either by trauma or inflammation. No evidence of inflammation appears in the record and the only evidence of trauma to the region involved is the trauma sustained by plaintiff November 15, 1957. Dr. Campanella frankly stated he could not be certain the trauma shown was the cause of plaintiff’s pain but he also testified plaintiff’s complaints were compatible with the injury related.
In an effort to disprove plaintiff’s alleged disability, defendants introduced in evidence certain motion pictures of plaintiff engaging in labor. These pictures which were viewed by the court, show plaintiff in the act of using a shovel in digging a trench for the foundation of a residence, spreading gravel evidently with the use of a garden rake, rolling a wheelbarrow and performing other types of ordinary manual labor. In most of these scenes, plaintiff is standing upright or nearly so but in some he is shown in the act of stooping or bending. It is the opinion of the Court that the pictures, in themselves, are not conclusive of plaintiff’s ability to work free of pain.
*606 It is well settled that an employee is considered disabled within the meaning and intendment of the term total disability as used in the workmen’s compensation act when he cannot perform his usual and customary duties without suffering pain and discomfort It is equally well settled that an employee is considered disabled if he suffers substantial pain in the performance of work of the same character as that in which he was engaged at the time pf the injury. Anders v. Employers Liability Assur. Corp., Ltd., La.App., 50 So.2d 87; Stansbury v. Ocean Accident & Guarantee Corp., Ltd., La.App., 52 So.2d 300; Johnson v. Cabot Carbon Company, La. App., 75 So.2d 389; Morrison v. Traveler’s Insurance Company, La.App., 79 So.2d 177; Reed v. Calcasieu Paper Company, La. App., 80 So.2d 588.
 The issue of plaintiff’s disability or the absence thereof is purely one of fact. The trial judge who saw and heard the witnesses resolved this factual issue in favor of plaintiff; his conclusion in this regard is entitled to great weight and not appearing manifestly erroneous upon the face of the record will not be disturbed.
We next consider plaintiff’s claim for interest, penalties and attorney’s fees which was denied by the lower court. The report of Dr. Mosely rendered November 20, 1957, shows that Dr. Mosely felt plaintiff would be able to resume work November 23, 1957. Furthermore, the evidence also shows plaintiff actually commenced work November 27, 1957, and has been employed on numerous jobs since said date. Plaintiff places great reliance on the fact the report of Dr. Mosely rendered January 6, 1958, indicates plaintiff was still disabled but plaintiff overlooks the fact that plaintiff resumed employment in November, 1957. Under the circumstances shown in this case, refusal of defendant to pay workmen's compensation benefits cannot be held arbitrary, unreasonable and capricious. The ruling of the trial court rejecting plaintiff’s demand for interest, penalties and attorney’s fees was correct and will be affirmed.
Affirmed.