116 So.2d 736 (1959)
J. Monroe COTTON, Plaintiff-Appellant,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant-Appellee.
No. 9058.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1959.
*737 McKeithen, Mouser & McKinley, Columbia, for appellant.
Gist, Murchison & Gist, DeWitt T. Methvin, Jr., Alexandria, for appellee.
AYRES, Judge.
By this action plaintiff seeks to recover workmen's compensation as for total and permanent disability because of accidental injuries allegedly sustained September 19, 1956, while in the employ of Justiss-Mears Oil Company, defendant's assured. Defendant, in its response, denied the occurrence of an accident or that plaintiff sustained accidental injuries in the employ of its assured. From an adverse judgment, plaintiff appealed.
On the occasion plaintiff was allegedly injured, he was engaged in his first day's service under his employment as a "roughneck," a term applied to those laborers who "rig up," or install, and operate drilling rigs in the search and exploration for oil, gas, and/or other minerals, under the supervision and direction of a superior known as a driller. The work of a roughneck is characterized as hard, manual labor. It consists, among other duties, of lifting and manipulating heavy tongs and the coupling and uncoupling of drill pipes during the course of the drilling operations.
On the occasion aforesaid, plaintiff was engaged, with another employee, in selecting and removing drill pipe from a rack to a place more accessible to its use. Plaintiff claims that while he and another employee were lifting a joint of pipe, due to a wet, oily plank upon which he was standing, he slipped, under the weight of the pipe, and strained and wrenched his back, causing a slipping or a spondylolisthesis at the fifth lumbar vertebra. This injury, he claimed to have sustained, occurred probably an hour-and-a-half before the termination of his shift, or day's work.
As for the occurrence of this accident, plaintiff relies primarily upon his own testimony. No complaint was made to his fellow employee, who, plaintiff claims, was present and engaged with him in lifting the pipe when he allegedly slipped and sustained accidental injuries. Neither did he make any report to his superior or to a fellow employee in whose motor vehicle he returned home following the day's work. Nor did he make any report or complaint to the fellow employee who came for him en route to work the following morning. Plaintiff's failure to return to work the next morning, according to his own admission and to a statement made to the employee, John Henry Mills, is that an asthmatic condition suffered by him had been adversely affected by the development of a severe cold.
To support plaintiff's claim as to the occurrence of an accident, reliance is made, however, upon a report allegedly made by him to his mother on returning home from work and later reports made to his brother and sisters. However, the employee who was allegedly assisting plaintiff in the removal of the pipe was neither named nor produced as a witness, unless it could be assumed that John Henry Mills was such employee, *738 who, however, testified that plaintiff sustained no accidental injuries in his presence or to his knowledge and no complaint was made to him by plaintiff to that effect. The record establishes, however, that two days following plaintiff's employment, plaintiff phoned his driller, made complaint that he sustained accidental injuries and sought information relative to medical attention. The above is a resume of all the testimony concerning the actual occurrence of an accident.
Following plaintiff's conversation with the driller, he was treated by Dr. J. M. Kittrell, a general practitioner, September 22, 1956. Doctor Kittrell's death, having occurred prior to the trial of the case, a report by him was filed in evidence. According to this report, Doctor Kittrell found some tenderness and some limitation of motion over the lumbar and dorsal areas of the spine. X-rays made by him were negative so far as revealing any basis for plaintiff's complaints or of the doctor's findings. Doctor Kittrell, finding no basis for a continuation of plaintiff's complaints, referred him for examination and treatment to Dr. Daniel M. Kingsley, an orthopedist of Alexandria, who made an examination of plaintiff September 28, 1956. On that occasion, the complaints were of pain from a "catch" between his shoulders and in the back around the hips. The examination revealed no evidence of muscle spasm, atrophy, or muscle weakness, or any indication of injury. Plaintiff was informed he could return to work. On a second examination of October 22, 1956, the doctor's findings were as on the occasion of his previous examination. No basis or reason for plaintiff's complaints could be found.
Due to the severity of plaintiff's attack with a common cold, Doctor Kingsley referred plaintiff to Dr. Robert J. Freedman, from whose physical examination and X-rays of October 24, 1956, no back pathology or evidence of any disability from an injury was found.
Plaintiff was subsequently referred by defendant to Dr. John B. Sutton, a neurosurgeon of Shreveport, who made an examination of plaintiff during January, 1957. His conclusions in a report of January 14, 1957, were:
"It is difficult to explain this patient's persistent discomfort after several months, in the area described, on the basis of the type of accident described.
"The type of accident which he described would hardly be likely to cause a compression fracture of the vertebra, even of minimal nature as the X-ray studies suggest. Except for this rather doubtful slight abnormality in the body of the 10th dorsal vertebra, his complaints are entirely subjective and of course, are therefore difficult to evaluate fairly. I am inclined to doubt that he is seriously disabled."
Doctor Sutton likewise having died prior to the trial, his report was offered in evidence.
Three medical experts examined plaintiff preparatory to or following the institution of this action, and their testimony was offered by plaintiff in his behalf. Dr. D. F. Overdyke, Jr., an orthopedist of Shreveport, examined plaintiff on four occasions during the interval of May 9 to August 31, 1957; Dr. A. Scott Hamilton, also an orthopedist, on September 5, 1958; and Dr. O. P. Mauterer, a general practitioner, October 16, 1958.
According to Doctor Overdyke, plaintiff has a lordotic, kyphotic back, that is, swayback, rounded forward, developmental in origin, and has a pre-spondylolisthesis of the fifth lumbar vertebra, defined by him as a condition in which the normal development of the pedicle, or one of the supporting strutsin this case of the last lumbar vertebranever fused into solid bone, attaining sufficient stability to prevent the forward slipping of the vertebra involved. This is distinguished from a spondylolisthesis where the vertebra has already slipped forward. Doctor Overdyke found no muscle spasm and made no substantial objective findings that would support plaintiff's *739 claim of accidental injury. He did, however, recommend a lumbosacral support for plaintiff's back and heat treatment to the back of his neck.
The instability of plaintiff's back, with minimal arthritic changes, according to Doctor Overdyke, placed him in a classification as an industrial liability and unfit for strenuous manual labor. However, no causal relationship was shown between plaintiff's headaches and the claimed injury. Because of plaintiff's emotional status, the doctor was unable to make a distinction between complaints caused by tension and frustration and that from any residual injury.
Doctor Hamilton diagnosed plaintiff's condition as a spondylolisthesis of the fifth lumbar vertebra, apparently of congenital or developmental origin, but possibly aggravated by the accident plaintiff claimed to have sustained almost two years previous to the doctor's examination. The doctor's conclusion was, however, that plaintiff was totally disabled.
Doctor Mauterer, in his examination more than two years following the alleged accident, found muscle spasm in the lower lumbar region and complaints of pain on pressure over the fifth lumbar vertebra, and restricted motion in that area due to a slipped vertebra. Doctor Mauterer was in accord with Dr. Scott Hamilton's conclusion that plaintiff is unable to do manual labor.
The rule, as repeatedly held by this and the other appellate courts in this State, is that plaintiff in a workmen's compensation suit bears the burden of establishing his case to a legal certainty and that conjecture, possibility, or even unsupported probability are insufficient to sustain recovery. Beard v. Mathieson Alkali Works, Inc., La. App.1936, 168 So. 730; Roberts v. M. S. Carroll Co., Inc., La.App.1953, 68 So.2d 689; Mouton v. Gulf States Utilities Co., La.App.1953, 69 So.2d 147; Driggers v. Coal Operators Casualty Co., La.App.1954, 73 So.2d 602; Robbins v. Chicago Mill & Lumber Company, La.App.1954, 76 So.2d 635; Sanders v. Sabine Lumber Company, Inc., La.App.1956, 90 So.2d 472; Bailey v. Aetna Casualty and Surety Company, La. App.1957, 94 So.2d 576; Davis v. Reynolds, La.App.1957, 96 So.2d 368; Gillespie v. American Bakeries Company, La.App.1957, 98 So.2d 104; Wyatt v. Consolidated Underwriters, La.App.1957, 98 So.2d 537; Washington v. Swanner, La.App.1957, 98 So.2d 913; Taylor v. Sam Grimmett, Inc., La.App.1957, 99 So.2d 365; Anderson v. Peek, La.App., 102 So.2d 776.
It is, therefore, the duty and burden of plaintiff in this case, as of plaintiffs in all compensation suits, to establish to a legal certainty and by a reasonable preponderance of evidence that he sustained accidental injuries while in the employ of the defendant's assured and that, as a result of said injuries, he has sustained injuries impairing his ability to do and perform the same work, or work of a similar character he was doing at the time he was injured. From our review of the record and the testimony to which we have heretofore referred, the conclusion is inescapable that plaintiff has not sustained his burden of proof and established that either an accident occurred or that he sustained accidental injuries. By the great weight and preponderance of the evidence, whatever disability plaintiff suffers is shown due, not to accidental injuries, but to a defect of the spine, shown to be of a congenital or developmental origin. This conclusion is irresistible from the testimony of all the medical experts testifying, particularly those who examined and treated plaintiff soon after he claimed to have been accidentally injured.
Even though there may appear some conflict in the testimony of the attending physicians from that of those only making subsequent examinations, the rule is that the testimony of the attending physicians is ordinarily accorded more weight than that of physicians who have not made examinations for the purpose of treatment. Walker *740 v. Monroe, La.App., 62 So.2d 676; Roy v. Guillot, La.App., 84 So.2d 469; Richmond v. New Amsterdam Casualty Company, La. App., 85 So.2d 717; Anderson v. Peek, supra.
We find particularly applicable the aforesaid rule in the instant case, as did the trial court, and conclude, as it did, that plaintiff failed to establish his demands to that degree of legal certainty as required by law. Manifest error in the judgment appealed has not been established.
For the reasons assigned, the judgment appealed is therefore affirmed at plaintiff-appellant's cost.
Affirmed.