AYRES, Judge.
By this action plaintiff seeks to recover of his former principal and its insurer workmen’s compensation as for total and permanent disability because of accidental *354 injuries allegedly sustained September 24, 19S4, at which time he was engaged as a logging contractor loading logs from skid-ways onto railroad cars for shipment to his principal’s mill.
Plaintiff’s complaints consist of a fractured heel, sprained back, and undenomi-nated injuries to his vertebrae. The issues tendered by defendants’ answer relate to the occurrence of the accident and the nature and extent of the injuries resulting therefrom. Trial was held March 21, 1957, approximately two years and six months following the accident, and judgment was rendered December 17, 1959, approximately two years and nine months after trial. The judgment awarded plaintiff compensation as prayed for and defendants have appealed.
The issues presented for determination are purely factual in character. Plaintiff therefore urges we give effect to a general rule that when only factual issues are involved the findings of the trial court are accorded particular weight and the judgment is affirmed unless manifestly erroneous. To the contrary, defendants contend no special credence should be given the trial court’s findings or conclusions because of the aforesaid prolonged delay between trial and rendition of judgment. This contention is predicated upon the proposition that the basis of the rule, that is, that the trial judge saw, heard, and observed the witnesses as they gave their testimony, has lost its force and effect.
While appellate courts are generally reluctant to reverse the findings of trial courts based primarily upon questions of fact, we are impressed that defendants’ position in the instant case is not without merit. Not only is memory dulled by the lapse of time, but, as expressed by our brethren of the Orleans Court of Appeal in Owens v. Felder, 35 So.2d 671, 672,
“ * * * it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial.”
But, we are not of the opinion that the general rule as to manifest error should be so staunchly or rigidly applied that “ * * * such cases practically become what might be termed ‘manifest destiny’ as to what the Judgment of the appellate court must and shall be * * as pointed up in the dissenting opinion of Judge Ellis in Jones v. Employers Mutual Liability Ins. Co. of Wis., La.App., 114 So.2d 602, 606.
The absence of any fact or circumstance upon which the rule, now under consideration, is based, or the presence of any fact or circumstances which lessens the force or effect of the rule, should be taken into account in weighing the findings and conclusions of a trial court as to the facts of a case. The prolonged delay between trial and rendition of judgment is, in our opinion, such a fact and circumstance that justifies and warrants a departure from the rule, and, accordingly, the judgment, in the instant case, is not, in our opinion, entitled to the weight ordinarily accorded judgments of a trial court. Therefore, where any fact or circumstance warranting such a departure appears in the record, all issues presented for resolution, whether they present questions of law or facts, should be given careful consideration. A failure in that regard would be a dereliction of duty as appeals are upon both the law and the facts.
The relationship between Walter Kellogg Lumber Company, Inc., and plaintiff was that of principal and contractor. Under their agreement, the principal fur *355 nished a mechanical power loader, referred to as a “logger’s dream,” and the contractor, the necessary labor for its operation in loading logs. This loader, by means of a crane, cables, and hooks, lifted the logs to be loaded from the skidways and deposited, or placed, them on railroad cars for shipment. On the occasion plaintiff was allegedly injured, he and his crew were loading logs into gondola cars, cars with low sides and open tops, commonly referred to as “coal” cars. The length of the cars permitted the loading of a tier of logs in each end.
From our own review and consideration of the record, we find no firm basis for disagreement with the trial court as to the occurrence of the accident in which plaintiff claims to have been injured. It would appear that plaintiff, while standing on one end of a car after the logs had been “decked” to a height of three feet above the sides of the car, signalled the loader-man that the log then in the process of loading was not properly placed and that it be lifted again for replacement. In this operation, as the weight of the log had shifted from the cables to the car, the cables became slack; and one of the hooks became detached and swung around, outside the car, in mid-air. In attempting to catch the hook, plaintiff became overbalanced and fell, but, in so doing, caught the chain, or cable, to which it was attached, and thus checked the force of his fall. He eventually, however, struck the ground on his left heel and then fell over on his back.
Plaintiff’s testimony as to the occurrence of the accident is supported by that of the company employees who were present and witnessed it. Moreover, plaintiff was examined and treated on the same day by Dr. Ralph E. King of Winnsboro, to whom plaintiff related a history of the occurrence and complained of injuries to his foot. The doctor found plaintiff’s left foot was swollen and discolored. X-rays, however, revealed no fractures.
That plaintiff sustained permanently and totally disabling injuries as the result of the accident is not, in our opinion, satisfactorily nor sufficiently established by the record. The rule is well established, notwithstanding the liberality enjoined as to procedure and evidence in compensation cases, that a claimant, in order to recover, must establish, with reasonable certainty, by a preponderance of evidence, he is disabled and that such disability results from accidental injuries. Green v. Heard Motor Co., Inc., 224 La. 1077, 1078, 71 So.2d 849; Edwards v. Shreveport Creosoting Co., Inc., 207 La. 699, 21 So.2d 878; Cotton v. Hartford Accident & Indemnity Co., La. App., 116 So.2d 736; Scott v. Roy O. Martin Lumber Co., Inc., La.App., 116 So. 2d 726; Henderson v. New Amsterdam Casualty Co., La.App., 80 So.2d 438; Smith v. International Paper Co., La.App., 73 So.2d 652.
The answer to the question as to whether or not plaintiff has sustained this burden of proof must be found in the evidence introduced on the trial of the case. The basis of the award of compensation was predicated upon a finding by the trial court of the reality of pain in plaintiff’s lower back. To reach this conclusion, reliance was placed entirely upon plaintiff’s testimony as to such complaints. Although the testimony of a claimant in a compensation case may be sufficient to establish his claim, such is not true unless there is nothing to discredit his account of the accident and the resulting disability and his statements are supported by surrounding circumstances. Fouchea v. Maloney Trucking & Storage, Inc., La.App., 108 So.2d 273; Roy v. Manufacturers Casualty Ins. Co., La.App., 87 So.2d 327; Roy v. Guillot, La.App., 84 So.2d 469; Garrett v. Gaylord Container Corp., La.App., 71 So.2d 373; Cascio v. Standard Oil Co. of New Jersey, La.App., 32 So.2d 66; Dolhonde v. Gullett Gin Co., La.App., 25 So.2d 104.
However, as stated in McCray v. Yarbrough, La.App., 20 So.2d 447, 449,
*356 “It is quite true that symptoms of pain of necessity are subjective in nature, and the existence, vel non, of pain is a fact known with absolute certainty only by the individual who claims to experience pain. However, as a practical proposition, complete faith cannot be accorded to claims of an injured party as to the existence of the pain simply upon the basis of his own testimony, and, for that reason, it is required that such evidence be strengthened by corroborative circumstances and testimony which would lead to an acceptance of such claims. * * * ”
See, also, Johnson v. Brown Paper Mill Co., Inc., La.App., 35 So.2d 774.
It was found by the trial court that plaintiff made no complaints of back pain prior to the accident September 24, 1954, but since then he has constantly made such complaints. Plence, it was concluded “ * * * that plaintiff’s statements of pain are genuine and the existence of pain in his back must be accepted as a fact.” Upon this conclusion and from the rule that if one, in the performance of his duties, suffers substantial pain, he is considered as totally disabled, the award of compensation was made.
Plaintiff is not an illiterate individual, incapable of handling his own affairs, explaining his injuries or making claim for compensation. He has an eighth-grade education, worked as a boilermaker in Lake Charles and New Orleans, and, on numerous occasions and in varied capacities, worked elsewhere in Louisiana and Texas. His experience, as a laborer, was extensive. Moreover, he made claim for and collected workmen’s compensation for two prior accidents.
The principal’s first knowledge of this claim was an undated memorandum sent by plaintiff and received by the principal during the early part of January, 1955. This memorandum is as follows:
“P. C. Montgomery.
“Injured 9-24-54, 11 A.M.
Was decking logs on top of car.
Reached for chain & fell to ground on left foot.
“Witnesses: Jeff Lowry
Leon Russell
W. P. LaBorde”
A similar memorandum was forwarded to the principal as to the injuries sustained by plaintiff’s employee, Reese Rogers, on December 16, 1954, following which, on January 14, 1955, Thomas E. Givens, one of the principal’s employees, was sent to make an investigation. On being interviewed by Givens, plaintiff made no mention that he himself had sustained accidental injuries. In view of plaintiff’s report of his employee’s injuries directly to his principal and his failure to disclose his own injuries, plaintiff’s explanation that he had not made such a report because he thought Dr. King would report the accident loses considerable force.
That plaintiff’s testimony is, in many instances, inconsistent and contradictory, and is in conflict with the testimony of other witnesses, clearly appears from the record. First, on reporting to Dr. King for treatment to his foot, no complaint was made as to any injury to his back. Plaintiff testified he was also treated by Dr. Eugene F. Worthen, on one occasion at the doctor’s office, and later at his own residence, for pain in the lower right side of his back. The doctor’s testimony is that he treated plaintiff for acute sinusitis only and that he did not recall ever having treated him for a back injury.
Plaintiff’s testimony that he reported the accident to Hugh M. Vick, general superintendent of the lumber company, was likewise denied by Vick, who testified he saw plaintiff, as least, once a week from September, 1954, until January, 1955, as well' as in the spring of 1955, and that at no time did plaintiff mention the accident to him; moreover, that, on every occasion he saw *357 plaintiff during the aforesaid interval, plaintiff was actively working.
The record further establishes that plaintiff received accidental injuries to his back December 2, 1953, while working for Lumis Company on location at the American Oil Refinery at Destrehan. According to Dr. Nick J. Accardo, plaintiff related, as to that occasion, history of an accident occurring while he was operating a pneumatic tool. While leaning forward over the machine, plaintiff told the doctor he felt a sudden, sharp pain in his lower back, worse on the left side than on the right, radiating to his right leg and thigh. The doctor’s opinion at the time was that plaintiff was suffering from a strain of the sacroiliac joint.
During August, 1955, plaintiff was admitted to the Charity Hospital in New Orleans, where he gave a history of the onset of pain in his lower back and leg as of December, 1953. A diagnosis was made of chronic lumbosacral strain. No mention was made of the accident of September 24, 1954.
Dr. Faheam Cannon, an orthopedist of Monroe, Louisiana, examined plaintiff at the request of the defendants October 27, 1955. Mention was then made of the purported injury to his back as a result of the accident upon which the present claim is based. To Dr. Cannon, plaintiff’s complaint of pain was principally in the right leg and hip, but occasionally on the left side. X-rays made at the time revealed plaintiff had certain pre-existing congenital anomalies. The doctor rated plaintiff with a ten percent permanent disability of the body as a whole. The same findings were again made on a subsequent examination of March 15, 1957. The doctor’s final opinion was that, as of the date of the latter examination, plaintiff was in the same condition as he was immediately prior to the accident of September 24, 1954. Plaintiff’s permanent residual disability was due, in the doctor’s opinion, to the presence of the pre-existing congenital findings and to the degenerative changes which plaintiff had at the time of the accident, and not as the result of the accident.
The record also discloses that plaintiff was in the Charity Hospital in 1950, 1952, 1954, 1955, and 1956 for the treatment of various ailments, including chronic alcoholism and nervous disorders. The record of his last admission to the hospital, November 4, 1956, mentions no complaints of back pain attributable to the accident herein involved. The attending physician’s notation, however, is of low back pain of long duration.
Nor do we find plaintiff’s position supported by a preponderance of the evidence as to his inability to perform and discharge the duties of his former occupation or work of a similar character. Within three or four weeks following the accident, by his own admission, he was able to operate the loader on occasions. After termination of his employment with the defendant, he was employed by his father 'in a supervisory capacity in logging operations where power saws, tractors, and trucks were used. In the course of this employment he cruised and estimated timber on various tracts and particularly one of 400 acres, and bought and sold logs. Plaintiff was seen by Givens operating the loader during the time he allegedly sustained accidental injury. He was observed by Vick, after the termination of his contract with the defendant, climbing over gondola cars while in the performance of duties in his logging operations.
From the foregoing résumé of the facts, it can only be concluded that whatever disabilities, if any, plaintiff now suffers, have not been established, by a preponderance of evidence and to that degree of certainty as required by law, to have resulted from or been occasioned by the accident of September 24, 1954.
The injury suffered by plaintiff was restricted to a sprain of his ankle. On consultation with Dr. King it was recommended that plaintiff stay off of his ankle for several weeks. This, however, he did not *358 do, but continued to perform the duties of his contract. No mention of an injury to his ankle was made by plaintiff to Dr. Cannon who, however, examined both ankles with a negative result. The period normally required for recovery from a severe ankle sprain was estimated by Dr. Cannon at six to eight weeks, three months as a maximum. This maximum period is exceeded by the period of plaintiff’s contract during which he was paid in full for his services. Hence, if plaintiff suffered any disability because of the injuries to his foot, he is nonetheless not entitled to compensation therefor in addition to wages. Smith v. Houston Fire & Casualty Ins. Co., La.App., 116 So.2d 730, and the authorities therein cited. However, plaintiff admitted, at the time of trial, his ankle had healed. The trial court properly disallowed any claim therefor.
Accordingly, the judgment appealed is now annulled, avoided, reversed and set aside, and plaintiff’s demands be and they are rejected and his suit dismissed at his cost.
Reversed.