YARRUT, Judge.
Defendant and its insurer appeal from a judgment awarding plaintiff workmen’s *445 compensation for total and permanent disability, for injuries plaintiff suffered in the course of his engagement. Plaintiff’s compensation coverage is conceded by both defendants.
On January 1, 1959, plaintiff was engaged as an independent contract dealer by the Times-Picayune Publishing Company of New Orleans, hereinafter referred to as Publishing Company, to distribute morning and evening newspapers in territory located in St. Tammany Parish.
Plaintiff was injured about 4:30 A.M. on January 12, 1959, while covering his route in Mandeville, assisted by a 14-year old school boy. The procedure of delivery was that plaintiff would deliver to subscribers on the left side of the road, and the boy on the other side.
While covering his delivery route, plaintiff by-passed two rural newspaper boxes located on his side of the road. Realizing this, he backed his car to these boxes, accidentally left the car in reverse gear, put on the foot brake, and proceeded to disemba-rk from the car. As his left foot contacted the ground, the car suddenly went in reverse. The open door hit him on his right hip. He fell to the roadway, landing on his left hip and left knee, with his left leg under the car and the heel of his left shoe caught under the body of the car. As the car was moving backwards slowly, plaintiff was able to keep pace with it, in effect, by walking on his hands, thus avoiding being run over by the left front wheel of the car. However, the open car door, swinging back and forth, struck him many times. His assistant, who had been seated in the right front seat with him, succeeded in stopping the car after it had traveled about two car lengths.
At the time plaintiff experienced only a stinging sensation on the left side of his knee and on the left hip, along with some abrasions, but was able to complete delivery of the newspapers that day and the following day. On the third day he notified a .representative of the Publishing Company of the accident.
There is no dispute that plaintiff was injured, except as to the character of the injury and its duration. Defendants contend the injury sustained by plaintiff was only to the left side of his hip and left knee, from which he has fully recovered and been paid compensation. Plaintiff insists his back injury was also sustained at the time and still prevents his working.
The medical testimony was given by Dr. John C. Roberts and Dr. Cornelius E. Gorman for plaintiff; and Dr. Irving S. Cahen and Dr. O. L. Pollingue for defendants.
Dr. John C. Roberts, general practitioner, initially treated plaintiff at the Publishing Company’s request, and had not discharged plaintiff up to the time of the trial. He stated that his ultimate diagnosis was possible post-traumatic arthritis and neuritis, with possible minor circulatory changes, and evidence of left sacroiliac involvement; suggested physotherapy and stimusonic treatments, pain relievers, and treatment of the left leg; and subsequently referred plaintiff to Dr. John F. Nabors. Dr. Roberts periodically treated plaintiff until July 31, 1959, and last saw him on March 7, 1960, when he found a 50% limitation of motion on flexing the spine to the left, accompanied by severe pain and that his earlier post-traumatic arthritis, etc., diagnosis was still essentially the same. In March, 1959, he referred plaintiff to Dr. Irving Cahen, specialist in orthopedic surgery, as he was unable to diagnose plaintiff’s persistent complaints. Dr. Roberts stated definitely that plaintiff was not physically fit to return to the job he held at the time of the accident.
Dr. Nabors submitted a letter-report, introduced at the trial, stating that plaintiff had a slight sciatic condition and a narrowing of the lumbar sacral articulation, which is 1^5, and suggested further treatment by observation.
*446 Dr. Gorman, general practitioner, examined plaintiff a few days before the trial and was furnished reports of the other doctors. His diagnosis was sciatica, possibly secondary to damaged lumbo-sacral, and/or the sacroiliac area and the sciatic area, or a possible ruptured inter-vertebral disc, most likely the latter because of the longevity of its existence. If plaintiff had a ruptured disc he would be unable to perform his job. He further believed that a man, treated as long as plaintiff, probably had something deeper than sciatica.
Dr. Cahen testified he diagnosed plaintiff’s injuries as contusions of the trochan-teric area near the hip joint, the thigh and the knee, and strained knee ligaments. He suggested additional observation and treatment by the use of a shoe correction, which was subsequently discarded. It was Dr. Cahen’s opinion that active use of plaintiff’s extremity could be continued, and he assumed plaintiff would be able to continue his activities. On plaintiff’s third and last visit, his examination revealed no orthopedic evidence of disability, and there was no explanation for plaintiff’s complaints relative to the areas of involvement. At no time did Dr. Cahen deem it advisable to determine if plaintiff had suffered a disc degeneration, though he felt a 54-year old man would have had some disc degeneration but, if plaintiff had disc degeneration to a degree that would produce a disturbance in the mechanical support of his back, plaintiff would have recognizable signs and symptoms.. He found no evidence of low lumbar disc degeneration with sciatic components.
Dr. Pollingue, orthopedic surgeon, examined plaintiff on August 5, 1959. He testified that plaintiff presented evidence of a lower disc degeneration, with some sciatic component, but did not believe that surgery was necessary; that his findings were indicative of trauma; and concluded there was no ruptured disc, but did find a congenital abnormality in plaintiff’s back; that the basic trouble was the compression of the sciatic nerve which had apparently occurred between his and Dr. Cahen’s examinations; that the presence of sciatica would affect plaintiff, so that he could not resume the work he did prior to the accident, without a corset to support his back, but even then he could not perform the work in the same manner and with the same efficiency as before the accident.
In considering the conflicting medical testimony, we must ever be guided by the principle that plaintiff must prove his case by a reasonable preponderance of the evidence. Waters v. L. L. Brewton Lumber Co., La.App., 120 So.2d 842; Montgomery v. Walter Kellogg Lumber Co., La.App., 120 So.2d 353; Scott v. Roy O. Martin Lumber Co., La.App., 116 So.2d 726; Coleman v. Rodorho Furniture Co., La.App., 116 So.2d 298; Rowan v. Travelers Ins. Co., La.App., 111 So.2d 387.
Since plaintiff is presently suffering and incapacitated as a result of his accident, we, in agreement with the Trial Judge, are of the opinion the medical evidence preponderates to the effect that he is not able to efficiently perform his duties with the Publishing Company, which include lifting bundles of papers weighing from 50 to 75 lbs. and constant bending of his back, without undergoing pain. This he is not required to do. Schram v. Lake Charles Ready-Mix, Inc., La.App., 125 So.2d 213; Monk v. Louisiana Forestry Commission, La.App., 124 So.2d 351; Jones v. Employers Mutual Liability Ins. Co. of Wisconsin, La.App., 114 So.2d 602; Bassemier v. W. S. Young Const. Co., La.App., 110 So.2d 766; Finley v. Hardware Mutual Ins. Co., La.App., 96 So.2d 238.
Regarding the fact that subsequent to plaintiff’s accident, he found employment with a drilling company and collected workmen’s compensation for a toe injury, plaintiff’s uncontradicted testimony is that Dr. Pollingue advised him to wear a girdle *447 and get work which might give some relief. One should not be penalized for following his doctor’s instructions. Plaintiff’s return to work refutes any suspicion of malingering, notwithstanding his trio of injuries, one before and one since the one involved here, might create the impression and suspicion that Plaintiff suffers from “compensationitis”.
For the reasons assigned, the judgment of the District Court is affirmed; appellants to pay all costs.
Affirmed.