CULPEPPER, Judge.
This is a workmen’s compensation case. Plaintiff’s original petition alleged total and permanent disability as a result of a lumbosacral strain received while moving a piece of concrete pipe. Apparently being unable to obtain any medical testimony to prove disability resulting from the back sprain, beyond the period for which compensation was paid, plaintiff amended his petition on the day of trial asserting work connected disability as a result of an epi-gastric hernia. The district judge held that, even assuming there was an accident in the course of employment, which is highly doubtful, plaintiff has failed to prove that the pre-existing epigastric hernia was either caused, contributed to or aggravated by such an accident. Plaintiff appealed.
*625 The issues are factual. The record abundantly supports the holding of the trial judge.
The record shows that plaintiff was working as a common laborer for a concern which manufactured concrete pipe. On Thursday, June 29, 1961 plaintiff and a fellow employee, named Alfred Daniels, were drilling holes in lengths of wet concrete pipe which stood on end, in rows, on the plant floor, for drying. The procedure was for one of them to hold a sheet of tin, perforated with a pattern of holes, against the soft concrete pipe, while the other used a small electric drill to make the holes in the pipe. Plaintiff testified at the trial that, while holding the drill, weighing 5 or 6 pounds in his right hand, he reached with his left hand to pick up a section of dry hardened concrete pipe which was in the way and felt a popping sensation in his back and a burning sensation in his stomach. Plaintiff testified he told Daniels he had hurt himself but he worked the rest of that day, which was Thursday, Bellard said he went home that night and told his wife about the pain in his back and his stomach. The next day, Friday, he returned to the plant and worked a full day but claimed that he told his superintendent he didn’t feel well. On Saturday he telephoned his foreman and reported his injury whereupon he was advised to see Dr. Price.
Regarding the occurrence of the accident, considerable, doubt is cast on the testimony of plaintiff by his co-worker, Alfred Daniels, who denied that plaintiff said anything to him about the injury; by the testimony of the foreman, Mr. Quebedeaux, who testified that he knew nothing of the alleged accident until Saturday; by the fact that plaintiff admittedly worked after the accident the remainder of Thursday and all day Friday; by the conflicting descriptions of the accident given by plaintiff to the various doctors and to the insurance adjuster and in his testimony during the trial. However, we, like the trial judge, are of the opinion that even assuming plaintiff did suffer the alleged accident in the course of his employment he has failed to prove that such an accident either caused, contributed to or aggravated the epigastric hernia.
Plaintiff couldn’t locate Dr. Price so he' went to Dr. W. G. Fisher on Saturday, July 1, 1961. Dr. Fisher, a general practitioner, diagnosed a lumbosacral sprain for which plaintiff was treated and finally discharged in September of 1961 as being able to return to work.
Plaintiff did not return to work. Because of a complaint of lower abdominal pain, Dr. Fisher referred him to Dr. Charles O. Frederick, a urologist, who saw plaintiff September 21, 1961 and diagnosed an infection of the epididymis and testicle, for which plaintiff was treated. This condition admittedly had no connection with the injury.
At the request of Dr. Fisher plaintiff was also examined by Dr. Jerome W. Ambrister, an orthopedic surgeon, on September IS, 1961. This doctor found plaintiff had fully recovered from the back injury. He stated that plaintiff did not complain of any pain in the upper abdominal region, (where the epigastric hernia was located).
Dr. Fisher also referred plaintiff to Dr. Norman T. Morin, an orthopedic surgeon, who examined plaintiff on October 6, 1961. He also found plaintiff recovered from the back injury. This doctor testified that he asked plaintiff whether he had complaints as to any other part of the body to which plaintiff answered that he did not.
In an effort to prove disability due to the epigastric hernia, plaintiff introduced the testimony of Dr. Benjamin Rush, a general surgeon, who examined plaintiff on January 29, 1962; Dr. William T. Fey, a surgeon, who examined plaintiff on February 15, 1962; Dr. Wilson D. Morris, a surgeon, who examined plaintiff only once; and Dr. Steve Price, a general practitioner, who examined plaintiff on October 24, *626 1961. These doctors found the epigastric hernia about one inch above the navel, manifested by a lump under the skin about two centimeters in diameter. They described the condition as usually being a congenital defect or opening in the fascia of the erectus muscle, through which a small piece of fat gradually protrudes along the course of a vessel or nerve. These doctors could not say whether the protrusion of fat was accompanied by any portion of the peritoneum (the membrane lining the abdominal cavity) so as to form a sac resulting in a true hernia. Of course, these doctors could give no opinion as to when this epigastric hernia occurred or how long it had been present, but they did testify generally that pain would follow the hernia rather closely and that the fat and maybe later the sac would manifest itself gradually through the opening in the abdominal wall. They all recommended that ■ since plaintiff was complaining of pain in the area of the hernia, an entirely subjective symptom, it should be surgically repaired before plaintiff returned to heavy manual labor. Of course, they could give no opinion as to whether this hernia had been caused, contributed to or aggravated by the alleged accident, other than to say that such a hernia could possibly be caused or could be enlarged or aggravated by physical strain.
Defendant introduced the testimony of Dr. Robert O. Emmett, a general surgeon for many years, who, according to the record, has had more experience with epigas-tric hernias than any of the other medical ■experts, he having seen several hundred of these hernias, which are relatively rare. He examined plaintiff on January 16, 1962 and diagnosed an epigastric hernia but without a sac and therefore not a true hernia. He stated that approximately 90% of such hernias do not involve the peritoneum or any sac and that a vast majority of such hernias produce no symptoms of pain. He stated that if plaintiff was experiencing pain he would recommend surgical repair, which was a very simple procedure and could be performed in his office under a local anesthetic, with about three sutures.
The trial judge has succinctly summarized the expert medical testimony in the following portion of his written opinion which we adopt as our own:
“It is apparent, from the testimony of the doctors referred to above, that plaintiff does have a small epigastric hernia, the cause of which, in relation to time or incident, none would hazard a guess. It is also probable, from the circumstances involving the filing of the original petition, the apparent recovery from the back sprain, and the attempts to investigate the epigastric hernia, beginning as late as October, 1961, that any relationship between the epigastric hernia and the alleged accident of June 29, 1961 was first conceived approximately three months after the alleged accident.
“Dr. W. G. Fisher first saw plaintiff on July 1, 1961, treated him until his discharge about three months later, referred him to at least three specialists to assist in evaluation of his physical difficulties, and was certainly in a much better position to evaluate the same than would be any physician or specialist who may have examined plaintiff only once and then several months after the alleged accident. Dr. Fisher testified in detail about the treatment for the back sprain, the pain in the lower abdomen attributable to the infection confirmed by Dr. Frederick, and was positive in his statement that, during the entire time of his treatment, plaintiff made no complaints that could be attributed to the epigastric hernia. He further testified' that progress charts and hospital records showed no complaints of any pain in the upper abdomen, where the pain would manifest itself if induced by an epigastric hernia. Most important to any possible relationship of the hernia to the alleged accident was the testimony of *627 Dr. Fisher that, on December 6, 1960, in the course of a pre-employment examination of plaintiff, he found that plaintiff then had the epigastric hernia now complained of. His records further reflected that, on September 26, 1961, and again on February 13, 1962, he re-examined the hernia and found no change in its size or condition from that reflected on December 6, 1960. Dr. Fisher expressed the opinion that plaintiff did not sustain, on June 29, 1961, any injury in the area of the epigastric hernia or any aggravation of the pre-existing hernia. This doctor’s testimony, about the pre-ex-istence of the hernia and his opinion that the same was not aggravated by the alleged accident of June 29, 1961, confirms and explains the belated attempt to connect causally the accident and the hernia discussed hereinabove.
“The Court must be guided by the rule which is authoritatively stated in the case of Carl Waters v. L. L. Brewton Lumber Company, Inc. [La.App.], 120 So.2d 842, quoted as follows:
“ ‘The rule is well established, notwithstanding the liberality enjoined upon the courts as to procedure and evidence in compensation cases, that a claimant, in order to recover, must establish with reasonable certainty, by a preponderance of evidence, that he is not only disabled, but that such disability resulted from accidental injuries sustained within the course and scope of his employment. Green v. Heard Motor Co., Inc., et al., 224 La. 1077, 1078, 71 So.2d 849; Edwards v. Shreveport Creosoting Co., Inc., 207 La. 699, 21 So.2d 878; Montgomery v. Walter Kellogg Lumber Company, Inc., et al., La. App., 120 So.2d 353; Cotton v. Hartford Accident and Indemnity Com pany, La.App., 116 So.2d 736; Scott v. Roy O. Martin Lumber Company, Inc., La.App., 116 So.2d 726; Henderson v. New Amsterdam Casualty Company, La.App., 80 So.2d 438; Smith v. International Paper Co., La.App., 73 So.2d 652.’ ”
It is noteworthy as affecting the credibility of plaintiff, that both he and his wife denied he had this epigastric hernia, or lump on his stomach, before the accident. This is directly contradictory to the testimony of Dr. Fisher who found the hernia six months before the accident, and remembered it as being “about the size of a marble cut in half”.
We conclude plaintiff has failed to show by a preponderance of the evidence that the epigastric hernia was either caused, contributed to or aggravated by the alleged accident. On the contrary, the evidence preponderates against any such causal connection.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.